1816.

HOWARD
v.
MOFFATT.

---

T. HOWARD, and MARIA his wife, *against* MOFFATT.

Where a husband asks the aid of the Court, to enable him to get possession of his wife's property, he must do what is equitable, by making a reasonable provision out of it, for the maintenance of her and her children. And whether the husband applies himself, or a suit for the wife's debt, legacy, portion, &c. is brought by the legal representatives of the husband, the rule is the same. The extent of that provision will depend on the circumstances of the case. But if the husband can lay hold of the property of the wife, without the aid of the Court, he may do it, this Court not having power to enforce a settlement, by interfering with his remedies at law.

THE bill stated, that the father of the plaintiff's wife *October* 17th. died intestate, leaving five children, and a large real and personal estate ; that part of the real estate, by the consent of the plaintiff, and the proceeds of what had been sold, are in the hands of the defendant, who refused to account,

1816.

HOWARD
v.
MOFFATT.

[ * 207 ]

[ * 208 ]

&c. The bill prayed that the defendant might account, and pay over the money to the plaintiff.

The defendant, (who is the brother of the plaintiff's wife,) in his answer, admitted the death of the ancestor, and the estate, &c., and stated the personal estate had been duly distributed; that most of the real estate had been sold; that he had in his hands moneys belonging to the wife of the plaintiff, amounting to 1,290 dollars and 90 cents; and that she had frequently requested him not to pay it over to her husband.

The master's *report* stated, that there were 1,923 dollars *and 77 cents due from the defendant; that it was proved before him, that the plaintiff was, by profession, a mariner, and poor; and that the defendant was a person of property, and a prudent man; that the wife of the plaintiff was examined, by consent, and stated, that she had always lived harmoniously with her husband, who was captured, some years ago, by a *French* privateer, and remained in *Europe* for five years, and was absent from *New-York* seven years: that when he went abroad he left money sufficient to maintain her during the time he expected to be absent; but the sum, and the credit he had given her, were soon exhausted, and she was obliged to sell the plaintiff's furniture for her maintenance; that before, and since the period of his absence, she had been exclusively maintained by him; and during his absence he had corresponded with her by every opportunity. That, as the plaintiff was now out of business, and might prove unfortunate, she wished the defendant to keep her money, as it would be safer with him; and that she was, at present, maintained by the plaintiff.

The cause was now brought on for a final hearing.

*D. B. Ogden*, for the plaintiff, moved that the report of the master be confirmed, and that the defendant be decreed to pay over the money in his hands to the plaintiff. He stated that the real estate of the wife, still unsold, was worth 2,000 dollars, and was adequate to her support.

*Riker*, contra, insisted, that the money should remain in the hands of the defendant, on his giving good security, for the use of the wife and child. He cited 1 *Madd. Ch.* 384. 391. 3 *Vesey*, 168.

THE CHANCELLOR. The general rule is, that where the aid of the Court is requisite to enable the husband to take possession of the wife's property, he must do what is equitable, by making a reasonable provision out of it for *her maintenance and that of *her children*, and without that,

166

the aid of the Court will not be afforded him. The prac-
tice is, for the husband, on a reference, to make proposals
of a settlement before a master, and, on the coming in of
his report, the Court judges of its sufficiency. Whether
the husband applies by himself, or a suit for the wife's debt,
legacy, portion, &c., be brought by the legal representatives
of the husband, as his executors, or assignees, the result is
the same, and the aid of the Court will not be afforded
without a suitable settlement, unless, perhaps, the wife comes
into Court, and on examination voluntarily waives any
provision. It seems now to be understood, (Sir *Wm. Grant,*
in *Murray* v. *Elibank,* 13 *Vesey,* 1.) that the wife may, at her
option, waive any settlement, though in one case, Lord
*Hardwicke* still sternly insisted on a provision for her, (*ex
parte Highham,* 2 *Ves.* 579.) if indeed we may rely on a
loose authority, and which was directly contrary to a prior
and strong case in his time on that point. (*Willats* v. *Cay,*
2 *Atk.* 67.) The extent of the provision will depend upon
the circumstances of each case. If the husband can lay
hold of the property without the aid of a Court of equity,
it is understood that he may do it; the Court has not the
means of enforcing a settlement by interfering with his
remedies at law. These are the general rules which have
been established by a course of practice under this peculiar
doctrine of the Court, and which has been steadily and
uniformly observed, for above a century past. Lord keeper
*Wright,* in *Oxenden* v. *Oxenden,* 2 *Vern.* 494. *Bosvil* v.
*Brander,* 1 *P. Wms.* 459. *Jacobson* v. *Williams,* 2 *P. Wms.*
382. *Brown* v. *Elton,* 3 *P. Wms.* 202. *Jewson* v. *Moulson,*
2 *Atk.* 417. *Grey* v. *Kentish,* 1 *Atk.* 280. *Burdon* v. *Dean,*
and *Oswell* v. *Robert,* 2 *Ves. jun.* 607. 680. *Brown* v.
*Clarke,* 3 *Vesey,* 166. *Lump* v. *Milnes,* 5 *Vesey,* 517. *Vide*
also 1 *Vesey,* 539. 1 *Ves. & Beame,* 300. and *Murray* v.
*Elibank,* 13 *Ves.* 1.)

*In the case before me, there are sufficient reasons for re-
quiring some provision for the wife out of the fund in ques-
tion. Though there be real property of the wife still undis-
posed of, yet the husband has a life estate in it, and her re-
siduary interest would not be very productive. The fact
has also occurred, that she has been left for years unsupported
by her husband, in consequence of his unavoidable absence;
and it appears from the master's report, that his means of
living are small, and the exercise of his maritime profession
unusually hazardous. Under these circumstances, provision
ought to be made for the wife out of the moneys now due
to her from her father's estate, before the husband can re-
ceive the aid of the Court.

I shall, therefore, suspend the decree, and recommend, in

[ * 209 ]

1816.

STOUGHTON
v.
LYNCH.

the mean time, that the amount of 1,000 dollars be secured for the wife and child, by an amicable arrangement between the parties, and that the residue be paid over to the husband. If this recommendation be not effective, I will then make some direction in the case.

N. B.    The arrangement recommended took place, and the cause was not brought again before the Court.