## McCRORY, Admr. *v.* FOSTER, Admr., *et al.*

An executor, who uses the money of the estate to redeem from sale on execution, land belonging to the testator, and takes the title in his own name, holds the land as trustee, and the purchase will be considered as made for the use of the estate.

Where the real estate of the wife was sold after coverture, and the notes and mortgage for the purchase money made payable to the husband alone; and where the wife, after the death of the husband, and while she was executrix of his estate, received a portion of the money due on the notes : *Held,* That the wife did not receive the money in her own right; that it was legally the money of her deceased husband's estate ; and that, as executrix, she was liable for its use.

Notes given to the husband for the purchase money of the land of the wife, and secured to him by mortgage, become the property of the husband, and when he dies, they pass to his personal representative.

*Appeal from the Johnson District Court.*

THIS was a bill in chancery, by Samuel H. McCrory, as

McCrory v. Foster.

administrator *de bonis non* of the estate of William B. Snyder, deceased, against Eliza Ann Foster, seeking to subject certain real estate, the title to which was in the said Eliza Ann, to the payment of the debts of said decedent, and also to recover from her an amount of money, claimed to be due to said estate.

The facts material to be stated, are as follows: Mrs. Foster was the wife of Wm. B. Snyder, who died in 1845, and she, with their son, and Thomas Snyder, a brother of the decedent, were appointed executors of his estate under the will. In 1840, William B. entered, in his own name, the southeast quarter of section seven, in township seventy-nine, range five. In 1845, and prior to his death, a judgment was obtained against the decedent, in the Johnson county District Court, and this land was sold to satisfy the same. It was purchased by the attorney of the plaintiff in that judgment. The sheriff's certificate of said purchase, was afterwards assigned to one Berryhill, by Berryhill to one Williams (the brother of said Eliza Ann), and by the said brother to the said Eliza Ann. This last arrangement was made in May, 1847, and when she was still one of the executors of her husband's estate. On this assigned certificate, in October, 1847, she obtained from the sheriff a deed for this land in her own name. After the marriage of said Wm. B. and Eliza Ann, she took by demise from her father, a parcel or parcels of real estate, situate in Ohio. This land was sold by the husband and wife in 1839. The sale was made for some $3,600, and was payable annually in different amounts, the last payment being due 1845. Notes were given for the purchase money, payable to the husband, and a mortgage executed to him as mortgagee, on the premises sold, to secure said notes. The installments due on this mortgage up to the time of Snyder's death, were collected and used by him. In February, 1846, the executors of Wm. B. Snyder, including said Eliza Ann, executed a power of attorney, authorizing John Snyder and James P. Williams, to receive and collect all moneys due the estate in the state of Ohio. In November, 1846, the said Eliza Ann

(still being executrix) was in Ohio, and there received the said last payment due on the mortgage ; but whether she received it from the mortgagor's representatives (he being dead), or from the attorneys so appointed, is not very clearly shown.. The Williams named in the letter of attorney, was the brother of Mrs. Snyder, and the same person who had assigned to her the sheriff's certificate. From the money so payable on the mortgage, she paid her brother the amount on said sheriff's purchase. It also appears that the executors, in May, 1846, filed their inventory of the property belonging to said estate, including the land in controversy, and which was valued at $1,000. On the mortgage is an acknowledgment of satisfaction, signed by said Eliza Ann, but not in her representative capacity. The words " one of the executors of William B. Snyder, deceased," follow her name. It is shown, however, that these words were written by another person, not in her presence, and without her knowledge and consent. In 1848, the said Eliza Ann was required to make a report of her doings as executrix of the estate of the said Wm. B. Prior to this time, she had intermarried with Silas Foster. Her husband, Foster, in answer to the citation, appeared in the probate court for her, and filed a paper, not sworn to, in which she charges herself with $605.04, including $555.82, the money so collected in Ohio, and claims to have paid out the sum of $108.02, showing a balance in her hands of $497.02, as such executrix. Foster's agency to act for her, against. respondent's objection in the District Court, was proved by what he himself stated at the time. In April, 1845, Wm. B. Snyder, in speaking of the residue of the purchase money due on the mortgage, said that it belonged to his wife, because the land was hers originally. The mortgagor having died, there was at that time, a sale of the land by the administrator of the mortgagor, and Snyder told his wife, that she could buy it if she chose, as the property was hers. He also states, that the property he had, was obtained through his wife, and that the notes and mortgage, at the time they were executed, were left with John Snyder, in Cincinnati, Ohio, and were

never in his hands. In her answer, the respondent alleges that she took but little part in the settlement of her hus‑ band's estate; that she was not cognizant of many things that were done; that she relied upon her co-executor, Thomas Snyder, as being better able to discharge the duties, and one in whom her husband had implicit confidence; that she has no recollection of having signed the power of attorney to Snyder and Williams, does not deny having signed it; and that if she did sign it, it was without knowledge of its con‑ tents, and was signed, as she did other papers, because they were presented by her co-executors, and her signature re‑ quired. She further claims that the money she received in Ohio, was hers, in her individual right, being due for land which she had inherited from her father; that it was not the money of her husband's estate; and that she never know‑ ingly signed any power of attorney, as executrix of such es‑ tate, authorizing the collection of the same. Other matters are stated in the answer, which, so far as they are material, will be found sufficiently referred to in the opinion of the court.

The answer is denied in general terms. The court de‑ creed that the land was the property of the estate, and that the said Eliza Ann held it in trust therefor, making it sub‑ ject to the payment of the debts, and to be held and descend as other property of the decedent. It was also found, that she had in her hands unaccounted for, and as such executrix, the sum of $335.04, which, with interest, she was decreed to pay the complainant. From this decree, the respondent appealed. Since the appeal was taken, the appellant has deceased; and in this court, her husband and administrator, Silas Foster, and their infant son, W. E. C. Foster, have been made parties appellant, while the heirs of William B. Snyder, on their own motion, have been made appellees, with their father's administrator.

*Stephen Whicher*, for the appellants.

*W. Penn. Clarke*, for the appellees.

WRIGHT, C. J.—The above statement contains all facts

McCrory v. Foster.

necessary or material, in order to understand the principal points decided. Other and minor questions have been raised, however, and those we will first settle.

It is first claimed by appellant's counsel, that as this suit is brought to subject this land to the payment of the debts of the decedent, and there appearing to be sufficient property aside from it, the bill is unnecessary, and for that reason should be dismissed. We think that the record does not sustain this position. It appears that the debts amount to some $1,100, after making deduction for certain claims due the estate, and after the sale and disposition of all property, except two parcels of real estate, other than this land. One parcel, known as the "church property," was appraised at $500. The bill alleges that it was offered for sale, and not sold for want of bidders, and that said property is not available for the payment of debts. This is not denied by the answer. The other property is alleged to be worth $600, and this is not denied, nor controverted by any proof. So that, without adjudicating any legal question that might be involved, if the facts were otherwise, we dispose of this point, by saying that the record does show a necessity for subjecting this land to the payment of debts, if it can be legally or equitably done.

Respondent also claims as an offset against any money which may be found in her hands, as executrix, the sum of $230—being the value, as she alleges, of the sheep and their fleeces, and provisions for family, for three months, which were not set off, and furnished her as the widow of the decedent, under the law of 1843. Whether she could adjudicate this claim in this manner, or must present such claim in the proper county court, is a question that we need not here determine. This is a claim that she sets up as new matter, and not in any manner responsive to the bill. Its correctness is denied in the replication. She introduces no proof on the subject. It was her duty to have done so; after having failed, it was correctly disallowed. The respondent claims that this claim required no proof, but proved itself. We think otherwise, and that there was no

more reason for allowing this demand, without proof, than there would be to allow any other. And especially so, as it was the duty of the executors under the law, to omit such items in their inventory of the property, and not to administer on them as assets; and we cannot presume that they violated their duty.

It is again claimed, that certain testimony was improperly admitted on the hearing. As we shall determine the case, however, without reference to such testimony, giving it no weight, it is unnecessary to examine this question. Without discussing further, then, these and, perhaps, other minor questions that arise, we come at once to those of more importance, and which relate to the substantial rights of the parties.

If the money which was paid by Mrs. Snyder for the redemption of this land, belonged to her husband's estate, then she must be declared a trustee; for being executrix at the time, the purchase will be considered as made for the use of said estate. It is against conscience, as well as the good faith that policy and necessity require in such relations, that the trustee shall have, either gain, profit, benefit, or advantage, by the use of the trust fund. If any profit or advantage does accrue, it shall go to the benefit of the *cestui que use;* and property acquired by such use of the trust fund, when claimed by the party beneficially interested, will be declared by the chancellor to be held in trust. In *Philips et al.* v. *Crammond et al.*, 2 Wash. C. C. 441, it is held, that if a receiver, executor, factor, or trustee, lay out the money which he holds in his fiduciary character, in the purchase of real property, and take the conveyance to himself, he who is entitled to the money, may follow the same, and consider the purchases made for his use, and the purchaser as his trustee. See also *Provost* v. *Gratz*, 1 Pet. C. C. 364. A trustee cannot purchase, or acquire by exchange, the trust property. *Wormly* v. *Wormly*, 8 Wheat. 421. No act of the trustee shall prejudice, as between them, the *cestui que trust. Van Horn* v. *Fonda*, 5 Johns. Ch. 338; 1 Johns. Ch. 510, 535, and 629. If a trustee purchase land with the trust

fund, taking the conveyance in his own name, in equity, the land is held as a resulting trust for the person beneficially interested. *Piatt* v. *Oliver, Williams et al.*, 2 McLean, 313, and authorities there cited. The rule is, that acts done by the trustee, are presumed to be, not for the benefit of the trustee, but for that of the *cestui que trust*. 4 Kent, § 61. Where such trust fund has been converted into another species of property, and its identity can be traced, it will be held in its new form, liable to the rights of the *cestui que trust;* and these general doctrines are not limited to trustees, but extend to all other persons in a fiduciary relation to the party, whatever that relation may be. See case in 2 McLean above cited; *Everton* v. *Tappan*, 5 Johns. Ch. 497; *Hart* v. *Ten Eyck*, 2 Ib. 62, 104, 441; 2 Story's Eq. 503 and 506; *Brown* v. *Lynch*, 1 Paige, 147; *Fellows* v. *Fellows*, 4 Cowen, 682.

Was the money used, then, a trust fund, or means which belonged to the respondent in her individual right? The determination of this question, depends upon the further one, whether the same had ever been so far reduced to the possession of, and become subject to the control of, her deceased husband, as to prevent her, as against his creditors and representatives, from asserting her original right thereto? And here, adopting the language of PARKER, C. J., in *Angel* v. *McLellan*, 16 Mass. 31, we must say, in advance, that the circumstances of the respondent's claim to this money, are so favorable in an equitable point of view, and the claim is based upon a ground so rigid, that if regret was to be indulged in the performance of duty, we should feel no small portion of it, in deciding this point in the case. We have examined for some correct principles and authorities, upon which the respondent's claim to this money might be sustained; but are led to the conclusion, from the facts contained in the record, that she did not hold the money in her own right, but that it was legally the money of her deceased husband's estate, and as such, as executrix, she must be held responsible for its use; and under the well settled and salutary rules above adverted to, the land redeemed, being clearly identified, must be declared held for the use of the *cestui*

*que trust.* The land sold in Ohio was hers, as one of the heirs of her deceased father. After coverture, the father died, and the land was sold. The money used in redeeming the quarter section in controversy, was the last payment due on the land, so inherited, and which she and her husband had sold. The notes and mortgage were made payable to the husband, and were left by him, or her, or both of them, with his brother. Whether the sale took place before or after Snyder and his wife removed to Iowa, is not shown; but it is shown that the installments due before the death of Snyder, were paid to and received by him. All parties concede that it was her land, that was sold; and in conversation with regard to the money paid, and to be paid therefor, it was spoken of as hers, and Snyder himself so spoke of it. As a correct man, and a considerate and kind husband, it is but natural that he should thus speak of it. He, in the same spirit, was doubtless entirely willing that she should do as she pleased with regard to it. But these matters; while commendable enough on his part, and well enough when viewed without reference to legal rights, cannot change such rights, especially where nothing was done by the wife to re-invest herself of the means so belonging to the husband, by virtue of the marital relation, and his legal rights resulting therefrom.

Where gifts, transfers, or transactions of any kind, with regard to the wife's property, take place between husband and wife, policy would seem to dictate, that a trustee should be appointed by them, to protect and guard the rights and interests of the wife, who being, for most purposes, under the legal control of the husband, needs not unfrequently a protector, to properly guard and secure her separate estate. Where no such trustee is appointed, however, we know of no rule that will hold such transactions void, or even voidable, in the absence of fraud and unfair dealing. It is true, courts of equity will guard, with jealous care, the rights of the wife in such cases. The husband will be held to the strictest fairness and integrity, and the wife will not be deprived of her property, by any gift or transfer procured by

such fraud, circumvention, or undue and improper influence. We see none such in this case. On the contrary, the whole testimony tends to show, not only that she freely and voluntarily submitted to this sale of her estate, but failed years afterwards to accept her husband's offer, in the presence of her own brothers, that she might buy the land they once owned, on the very mortgage debt which was made payable to him. To hold that there was such fraud and improper influence as should set aside this gift, and defeat the husband's legal rights, would be doing very great violence to all this testimony, and the doubtless deserved confidence which she placed in the integrity and honesty of her husband. As sustaining the views above suggested, as to the rights and powers of the wife over her separate property, and the presumptions arising as to such gifts in courts of equity, see *Bradish* v. *Giles*, 3 Johns. Ch. 523; *Methodist Episcopal Church* v. *Jacques and others*, 3 Ib. 77; Story's Eq. Juris. 1395; *Demarest and wife* v. *Wynkoop*, 3 Johns. Ch. 129.

The husband, by the marriage, at common law, became entitled absolutely to the goods and personal chattels of which the wife was actually or legally possessed at the time, in her own right; and also of such as came to her during her marriage. As to her choses in action, however, he was not so entitled absolutely, until they were reduced into possession, and that during her life. Story's Eq. Jur., § 1402; Reeve's Dom. Rel. 1; Clancy's Rights of Mar. Women, 109. Where reduced to possession, however, as they then cease to be choses in action, and become choses in possession, her right by survivorship will be barred. See Clancy's Rights Married Wo. 111; and authorities cited. It can make no difference, whether the notes in Ohio were given for real or personal estate. Her right thereto by survivorship must be barred, if there was a reduction of the same to his possession. If the possession of his brother, was for him as his agent or attorney, then it was the possession of the husband, and must bar the right of the wife. Clancy's Mar. Wo. 112 and 3 & 4; *Schuyler* v. *Hoyle*, 5 Johns. Ch. 196.

The case of *Dixon, admr.* v. *Dixon and others*, 18 Ohio, 113, was a bill filed to determine the rights of the surviving husband to certain choses in action, belonging to the wife. One note in controversy, taken in the husband's name, was given by one M. R. for the dower of the wife in the estate of a former husband.    It is there held, that such choses in action of the wife, may be reduced to possession by the husband, by substituting other securities, taken in his own name, and that "notes taken by the husband in his own name, for lands of the wife, sold during coverture, will of course belong to him." So in the case of *Ramsdale* v. *Craighill and others*, 9 Ohio, 199, it is held, that if husband and wife unite in selling her realty, and receive the money, it is his; and if invested in real estate, and the title taken to himself, the estate is his. In *Talbott, admr.* v. *Dennis. and others*, 1 Carter, 471, it is held, that notes given to the husband, for the purchase money of the land of the wife, and secured by mortgage to him, became the property of the husband, and when he dies, they pass to his administrator, though it was the intention of the wife, that the proceeds of the land should be appropriated in a certain way, for the benefit of herself and children. See, also, upon this subject, 2 Kent, 136; *Pierce* v. *Thompson*, 17 Pick. 391; *Fourth Ecclesiastical Society in Middletown* v. *Mather*, 15 Conn. 587; *In re Gray's Estate*, 1 Barr. 327; 7 Watts & Serg. 238.

It is claimed, however, by counsel for respondent, that the money due on the last payment on the Ohio land, never having been paid to the decedent, or his administrator, the wife having reduced it to her possession, and this suit being brought for the purpose of having the husband's rights to that fund settled, it is proper that the wife's equity, or right to a portion of that fund, should also be considered and determined. We do not think, however, that this is such a case as comes within the rule laid down in the argument and authorities cited. Here the husband's right to this property—the note, mortgage, and money arising therefrom—was perfect and absolute. No suit was necessary on his part, or that of his administrator, to make more perfect

McCrory v. Foster.

such right. Having, as we have shown, reduced it to his possession, and this being the just and legal exercise of his marital rights, he became the absolute owner, and had the right to dispose of it at pleasure. In such case, the rule is, that courts of equity will not interfere to restrain or limit it. Where, however, the husband, or his representative, seeks by action to reduce to possession such choses in action, equity will, in a proper case, give to the wife, on application, a provision out of such portion so sought to be reduced to possession, by such suit. In the one case, his right to the property is absolute, and needs no aid from the chancellor to enforce it; and equity, no more than law, can deprive him of it, in the absence of fraud, or evil practice, in obtaining it. In the other case, he seeks to enforce a right which, until consummated by legal possession, may be said to be but an equitable right; and as he seeks equity, by asking the enforcing of this right, he will be required to do equity. We think this distinction, briefly stated, is well sustained by the books. See Story's Eq. Jur. 1403; Clancy's Mar. Wom. 441; *Howard* v. *Moffatt*, 2 Johns. Ch. 205.

Of the money received by the wife, a portion was paid to redeem this land, and the balance retained, which she was ordered to pay by the decree. The ruling above, will render any reference to that part of the decree unnecessary. If the money invested in the land was held by the wife, in her capacity as executrix, and not in her own right, so was the remaining portion of the same fund received by her. We, therefore, conclude that there is no sufficient ground for disturbing the decree below, and it will, therefore, be affirmed.