Blake v. Blake.

## BLAKE v. BLAKE.

The essence and requisite of every consideration is, that it should create some benefit to the party promising, or some trouble, prejudice, or inconvenience to the party to whom the promise is made.

Whenever any injury to the one party, or any benefit to the other, springs from a consideration, it is sufficient to support a contract.

Each party to a contract may ordinarily exercise his own discretion, as to the adequacy of the consideration; and if the agreement be made *bona fide*, it matters not how insignificant the benefit may apparently be to the promissor, or how slight the inconvenience or damage appears to be to the promisee, provided it be susceptible of legal estimation.

Where the inadequacy of consideration is so gross, as to create a presumption of fraud, the contract founded thereon, will not be enforced; but in such a case, it is the *fraud* which is thereby indicated, and not the inadequacy of consideration, which invalidates the contract.

A wife, having the power to convey her real estate in the same manner as other persons, she may convey it to her husband, and in return, or in consideration thereof, receive from him a grant or conveyance of other property.

So she may, for a money consideration, make or execute to him, a release of her interest in his real estate.

Where a wife conveys her interest in real estate to her husband, or where

she releases to him an inchoate right in his real estate, for a consideration, just and adequate, and untainted by fraud, circumvention or improper influences, the contract is not void, and in equity she is bound by it.

Where after a divorce obtained by the husband, in which action the wife made no appearance, and a decree was rendered against her by default, the wife filed her petition against the husband for an allowance of alimony, and a decree was rendered, giving her the sum of one dollar and eighty-seven-and-a-half cents per week, during her natural life, which the husband was to pay for her weekly support; and where the husband afterwards executed to the wife a mortgage on certain real estate, to secure the payment of the said weekly allowance, by the terms of which he was to make the payments quarterly, during her natural life, instead of weekly, and the wife at the same time, and as a part of the same transaction, in consideration of the sum of sixty dollars and eighty cents, the amount of the allowance made to her by the decree, to that date, and the agreement of the husband to pay all costs and charges in the prosecution of her claim for alimony, and his further agreement to pay said allowance quarterly, executed and delivered to the husband a release and relinquishment of all her right, title and interest in the real and personal estate of her husband, and of all the real estate of which he was seized during the coverture, and all right of dower, except the lien created by the said mortgage; *Held*, 1. That the mortgage and contract was not void for want of consideration; 2. That the release of the wife was not void, for being made between husband and wife.

## *Appeal from the Dubuque District Court.*

### WEDNESDAY, OCTOBER 20.

IN CHANCERY. The bill recites that petitioner was married to William Blake, the brother of respondent, on the 25th of February, 1828; that they then resided in Ireland, and that said William there left her, and came to Iowa, about the year 1830. It is also averred that William died in May, 1855; that petitioner came to Iowa to reside in July, 1852; that at his death he owned a large amount of real and personal property; that said respondent claims to own and control the same, by virtue of a will alleged to have been made by William, a short time before his death; and that petitioner has demanded of said respond-

ent, her dower in her said husband's estate, but that he refuses to assign the same to her. It is then prayed that an account may be taken of the estate of the said deceased, and that she may have her dower, and a distributive share of the rents and profits.

The answer admits the marriage, the removal of said William to Iowa, and his death in 1855. It is then averred that at the March term, 1853, of the district court of Dubuque county, the said William filed his petition for a divorce, for causes in said petition set out and contained, from the bonds of matrimony then existing between him and the said Mary ; that the venue was afterwards changed to Jackson county, and such further proceedings were thereupon afterwards had, that at the April term, 1853, a decree was rendered in accordance with the prayer of said petition, dissolving the marriage relation then existing between them. A copy of this decree is set out as an exhibit to the answer, from which it appears that the said complainant (William), appeared by his solicitor, "and it appearing to the satisfaction of the court, that the pendency of this suit had been published in a public newspaper printed in the city of Dubuque, according to law, and the defendant being three times called, came not, but made default. And it appearing to the court, that a special master had been appointed in the county of Dubuque, to take testimony in this cause, and the same being reported to this court, and the court being satisfied from said report, that the allegations set forth are true, does hereby order and decree, that the bonds of matrimony heretofore existing between complainant and defendant, be dissolved."

The answer then denies that petitioner was the wife of the said William, at the time of his death; and insists that by the proceedings in the said Jackson district court, she was divested of all right or claim in any property or effects of her said husband. The respondent further sets up, that at the September term, 1853, of the district court for Jackson county, the complainant filed her petition against the said William, praying for an al-

lowance by way of alimony; that the venue in that case was changed to Dubuque county, and at the October term, 1853, in that county, a decree was entered, giving to the petitioner the sum of one dollar and eighty-seven and a half cents per week, during her natural life, which the said William was to pay for her weekly support. And for further answer, respondent shows, that on the 8th of December, 1853, the said William executed to the said Mary, a mortgage on certain real estate, to secure the payment of the said weekly allowance, by the terms of which, he was to make the payments to her quarter yearly, during her natural life, and not each week; and at the same time, and as a part of the same transaction, the said Mary, in consideration of the payment to her of sixty dollars and eighty cents—the amount of the allowance made to her by the decree to that date—and the agreement of the said William to pay all costs and charges in the prosecution of her said claim, and his further agreement to pay said allowance in quarter yearly payments, secured by said mortgage, executed and delivered to the said William, a release and relinquishment of all her right, title and interest, in all and singular the real and personal estate of the said William, and in all the real estate of which he was seized during coverture, and all right of dower in her vested by virtue of said marriage, except the lien created by virtue of said mortgage. Copies of the mortgage, and the said relinquishment, are annexed to the answer, sustaining substantially these averments.

The respondent then proceeds to state, that the said William, during his life time, and the said defendant since that time, have faithfully paid and complied with the conditions of said decree and contract; and that by reason of the premises, the complainant has no right or interest in and to the property of the said William, other than is provided for by said mortgage and contract. It is admitted by the answer, that the said William died seized and possessed of a large estate, and that the same consisted of the real estate and property set out in the petition; that respon-

dent claims to own and hold it by virtue of the last will and testament of the said William, subject to certain legacies and conditions in said will expressed; and denies that she is entitled to dower, or to an account, as prayed for. Most of the records and proceedings in the divorce case, and the application for alimony, are made part of the record in this case, which will be found referred to, as far as material, in the opinion of the court.

To this answer, there was what was treated by the court below, and by counsel here, as a demurrer, which was overruled, and judgment rendered against complainant for the costs of the suit. From this judgment, she appeals.

*Smith, McKinlay & Poor*, for the appellant.

*Barker & Wilson*, for the appellee.

WRIGHT, C. J.—Complainant insists that her demurrer should have been sustained: *First*. Because the decree of divorce is void, the district court of Jackson county not having jurisdiction, so as to hear, try and determine the case; and, *second*, That whatever effect the mortgage and contract referred to in said answer, might otherwise have, they are void, and have no effect: 1. Because they were made between husband and wife; and, 2. For a want of consideration. Other points are made, to which we may refer, but the foregoing embrace substantially, the main positions assumed by appellant. We shall notice them, as far as necessary, in the inverse order of their statement.

Is the mortgage and contract void for want of consideration? Under the Code, all contracts in writing import a consideration in the same manner as sealed instruments did before its passage. Section 975. It is claimed, however, that these instruments show upon their face a want of consideration. The argument is, that by the decree of October, 1853, the husband was bound to pay alimony to the same amount, as provided for in the mortgage; that the decree was a lien upon all the land of the husband;

·and that the giving of the mortgage could, therefore, give the wife no additional advantage.

The essence and requisite of every consideration is, that it should create some benefit to the party promising, or some trouble, prejudice, or inconvenience to the party to whom the promise is made. Whenever, therefore, any injury to the one party, or any benefit to the other, springs from a consideration, it is sufficient to support a contract. Each party to a contract may, ordinarily, exercise his own discretion, as to the adequacy of the consideration;. and if the agreement be made *bona fide*, it matters not how insignificant the benefit may apparently be to the promissor, or how slight the inconvenience or damage appear to be to the promisee, provided it be susceptible of legal esti_ mation. Story on Contracts, section 431. Of course, however, if the inadequacy is so gross as to create a presumption of fraud, the contract founded thereon would not be enforced. But, even then, it is the *fraud* which is thereby indicated, and not the inadequacy of consideration, which invalidates the contract.

In this case, it seems to us, that the consideration does affirmatively appear, and is sufficiently adequate. In the first place, the husband undertook to pay the alimony in quarterly payments, instead of each week; and while he undertook to pay no more, yet he undertook and obligated himself to pay it in a different manner. We can well conceive, that if this would not result in creating a trouble or inconvenience to the husband, it might create a benefit to the complainant, in that she would receive her money in larger sums, instead of a small pittance each week. Then, again, by the decree, he was only bound to pay the costs of the proceeding for alimony, taxed at three dollars, whereas, by the settlement, he was to pay the costs and charges in the prosecution of said claim. The *charges* here referred to mean, of course, more than the mere costs, and we suppose them to include attorney's fees. If so, the consideration is shown. But more than this, these promises were made upon a settlement of the difficulties

existing between these parties. There was a decree for divorce and for alimony, from which either party could appeal, or to set aside which motions might then have been made in the district court. As to these suits, the parties made a compromise and this settlement. As such, in the absence of fraud, so far as relates to the consideration, it should be sustained. Story on Contracts, section 4990, *a*.

We come then to the inquiry, whether the release and contract is void, for being made between husband and wife. In an equitable view, it seems to us, that the circumstances disclosed in the answer of respondent, are strongly opposed to the relief sought by complainant. It will be observed, that she filed her petition for alimony in September, 1853, which was within about six months from the time of the rendition of the decree for divorce. The year within which she, by law, was allowed to appeal, had not then expired, nor had the time expired within which she might, under section 1835 of the Code, have moved to set aside the default entered against her. She then had notice of the decree, for her petition refers to, and is in fact, based upon it. So, the mortgage and relinquishment were executed in December, 1853, and before the expiration of the year. The answer avers that the husband, during his life time, complied with the conditions contained in the mortgage, by paying the amount thereby secured, and that his executor has, in like manner, complied since his death. The husband died in 1855, and then, for the first time, the decree of divorce is attacked, and an effort made to avoid the settlement made two years before, in his life time. Under such circumstances, it seems to us, that the equities are strongly in favor of respondent, and that nothing less than a strong and imperative rule of law, would justify us in disturbing a decree upon which the parties have freely and willingly acted, or in interfering with an agreement and settlement, made for the purpose of compromising their unhappy and unfortunate difficulties. Is there any such rule? for if there is, it should be followed, whatever the consequences. The principles

of the common law apply to declare contracts made between husband and wife, after marriage, a mere nullity, for there is deemed to be a positive incapacity in each, to contract with the other. And while courts of equity recognize this rule, they will, and do, under particular circumstances, give full effect and validity to such contracts. Story's Eq. Jur., sec. 1372; 1 Fonb. Eq., B. 1, ch. 2, sec. 6; *Bradish* v. *Gibbs*, 3 Johns. Ch., 523.

In *McCrory* v. *Foster*, 1 Iowa, 271, these principles were recognized, and it is there said, that courts of equity will, in such cases, guard with jealous care the rights of the wife; the husband will be held to the strictest fairness and integrity; and the wife will not be deprived of her property, by any gift or transfer procured by fraud, circumvention, or undue, or improper influence. And while policy would dictate in such cases, that a trustee should be appointed, to protect and guard the interests of the wife, yet if none should be appointed, we know of no rule which declares such gifts or transfers void, in the absence of fraud or unfair dealing. If it be claimed that these rules have no application or place, in contracts or agreements of the character relied upon by respondent, and that such an agreement is void, by the rules of equity jurisprudence, we will view the question in another aspect. Our law recognizes the right of the wife to hold and control property in her own name. The obligations resulting from this relation, are by no means designed by the Code, to be weakened; and yet, it is manifestly true, that the existence of the wife is not now, so completely as formerly, merged into that of the husband. Under certain circumstances, she may transact business in her own name; she may have a separate property, which she can hold exempt from the husband's debts; her personal property does not vest, as of course, in the husband; she may make a valid contract which purports to bind herself only; she may convey her interest in real estate in the same manner as other persons; may act as executor independent of her husband; and, finally, may receive grants or gifts of prop-

erty from her husband, without the intervention of trustees. Code, sections 1192, 1207, 1304, 1447, 1453.

Now, if by these provisions, privileges and rights are given to the wife, which she did not possess by the strict rules of the common law, what legal rule is violated, or what equitable principle infringed upon, if she is held to corresponding liability, upon contracts made during coverture? Or, to state the proposition in another form, if, under the principles of the common law, courts of equity did in some, and indeed in many instances, give full effect and validity to her contracts, why should she not be bound by her engagements, in the absence of fraud or unfair dealing, under a statute which greatly enlarges her powers and privileges? She can make a valid contract, which will bind herself only. This, it may be said, has reference to contracts with third persons. This is, perhaps, true to the extent, that if made with third persons, the same rule would govern the adjudication of her rights, which would govern contracts generally; whereas, if made with the husband, he would be held to the utmost good faith, and slight circumstances of fraud and circumvention, would be sufficient to declare it invalid.

But she is also given full power to convey her interest in real estate, in the same manner as other persons; and can receive gifts and grants of property from her husband, without the intervention of trustees. If the husband, then, shall grant to her a portion of his real estate, as between them, it is good, without the intervention of trustees. There is, therefore, no rule which requires that the legal estate shall vest, or be vested, in a third person for her use. On the contrary, the statute expressly gives her the right to receive, and the husband the power to give or convey, in their own names directly—he being the grantor, and she receiving the whole estate, legal as well as equitable. If she conveys her interest in real estate to the husband, or if she shall release to him an inchoate right in his estate, for a consideration just and adequate, untainted by fraud, circumvention or improper influences, it seems to us,

that in equity, she is bound by it. Having the power to convey her real estate, in the same manner as other persons, no reason is perceived why she might not convey it to her husband, and in return, or in consideration thereof, she receive from him a grant or conveyance of other property. If so, why may she not, for a money consideration, make or execute a release of her interest in his real estate?

In this case, there is nothing shown to impeach the fairness of the transaction or contract entered into on the 8th of December, 1853. It is not referred to in the bill, but is set up in the answer. and therein it is insisted to have been a fair and equitable arrangement. If so, it should be sustained. If, however, there was a want of fairness and fair dealing upon the part of the husband, it should be set aside. Such a contract may be assimilated to those made between a trustee and a *cestui que trust*, or principal and agent. Slight circumstances may be sufficient to justify the chancellor in declaring them invalid. They are not, however, in the absence of such showing, void.

The foregoing conclusions render it unnecessary to examine the question, whether the decree of divorce was void; as well as the further one, whether complainant can be allowed to contest its validity, after she has voluntarily appeared in court, and, by a positive affirmative act, recognized its existence and force. Her bill for alimony was based and founded upon the fact, that her husband had filed his bill, and the prayer of it is, that the decree for a divorce may be so far modified as to give her alimony. Granting that the court decreeing the divorce had no jurisdiction over her person, and that the decree was therefore void, it is questionable, to say the least of it, whether she has not, by an appeal to the same court for alimony, based upon the proceedings which might not otherwise bind her, precluded herself from afterwards objecting to the jurisdiction. But as it is unnecessary, we intimate no further opinion upon this point in the case. Upon the other grounds stated, we think the decree below should be affirmed.