DES MOINES, OCTOBER TERM, A. D. 1860.

In the fifteenth year of the State.

---

PRESENT:

HON. RALPH P. LOWE, CHIEF JUSTICE.
"    CALEB BALDWIN,  } JUSTICES.
"    GEO. G. WRIGHT.  }

| 10 | 517 |
| 83 | 605 |
| 10 | 517 |
| 103 | 387 |
| 10 | 517 |
| 104 | 702 |

---

## SUITER v. TURNER, et al.

1. POSSESSION BY THE GRANTOR AFTER SALE. The doctrine of *Twyne's Case*, (8 Coke 80) applies only to the possession of chattels by the grantor after sale: and the possession of realty by the grantor, after conveyance, is not *per se* either conclusive or presumptive evidence of fraud in the sale.

2. SAME. Such possession may be considered in connection with other circumstances in determining an issue as to fraud in the sale. Its weight as an indication of fraud must depend upon the circumstances of each case.

3. NOTICE BY RECORD. The record of an instrument under chapter 54 Revised Laws 1843 does not impart notice to subsequent purchasers if the instrument recorded was not acknowledged as required by the provisions of that chapter.

4. NOTICE BY POSSESSION. Possession of real property is notice to subsequent purchasers of the occupant's title as the same would be developed by due inquiry; but it does not impart notice of defects therein, or in the title paramount thereto.

5. JURISDICTION. Every presumption obtains in favor of the regularity of proceedings in a court of general jurisdiction; and a recital in a decree in a foreclosure proceeding showing the service of notice by publication is sufficient to sustain the jurisdiction.

6. PARTIES. A failure to make an occupant of mortgaged premises a party in the proceeding to foreclose, under chapter 103 Revised Statutes 1843, did not invalidate such proceedings as to those persons who were made parties. Such occupant, however, could not be prejudiced by the decree in proceedings to which he was not a party.

7. MARRIED WOMAN. A married woman may acquire and hold real as well as personal property in her own right independently of her husband.

*Appeal from Scott District Court.*

SATURDAY, OCTOBER 6.

JOSEPH TURNER, in August, 1843, was indebted to the complainant, Philip Suiter, to the amount of two promissory notes; one dated in October, 1837, for $300.00 and the other in April, 1840, for $60. On the 7th of August, 1843, Suiter commenced his action on these notes, and on the 10th of September, 1844, recovered judgment for $409.60 and costs. Execution was issued in the same month, and on the 5th November following, the real estate in controversy was sold thereon to complainant. On the 17th of April, 1856, the sheriff made him a deed, which was duly recorded. This land was sold as the property of said Turner. Up to the time of suing upon said notes, and afterwards, Turner was in possession of the lands, using and occupying them apparently as his own. June 8th, 1843, Turner conveyed the lands to one Cullom, for the stated consideration of five hundred and fifty dollars. Cullom was the brother-in-law of Turner; and complainant alleges that this transaction was fraudulent, made to hinder and delay creditors, and that the deed was made without consideration. The conveyance to Cullom was recorded on the 12th of June, 1843. At the time the deed was executed, Turner and Cullom entered into a written agreement, reciting, that Cullom had purchased the land (and some articles of personal property) for $550, payable

in three years, secured by mortgage on the premises.    Turner was to remain in possession, to build a cabin adjoining the house he then lived in; also a threshing floor.    He was not to destroy or sell any timber more than was needed for the use of the farm; was to make three acres of timothy, and keep the fences in repair.    The proceeds of the cattle sold " were to go towards the improving the farm, after what might be necessary for the use of said Turner's family." Turner was to pay all taxes on the farm.    It seems that Cullom contemplated going to Pennsylvania, and it was further agreed that he was to have the use of one of the houses the last of the three years, if he returned and needed the same.    This agreement was not acknowledged, but was recorded September 2d, 1843.

May 28th, 1849, a decree of foreclosure was entered, in favor of A. Campbell, against said Cullom, on the mortgage given to Turner for $747.09, and on the 29th of the following September, the premises mortgaged were sold under said decree to John Campbell for $600; and on the 5th of February, 1858, he obtained a sheriff's deed.    May 10th, 1859, Campbell conveyed, by deed, the same premises to Tacy Turner the wife of Joseph, for the named consideration of $600, payable the 1st of the next January, with ten per cent interest, and took from her a mortgage on the premises to secure the purchase money, executed by herself and husband.    Complainant alleges that the pretended transfer of the Cullom mortgage, its foreclosure, the purchase under the special execution, and the transaction between J. Campbell and Tacy Turner were fraudulent; that the Campbells and said Tacy had full knowledge of the fraudulent purpose of the parties to the original transaction between Joseph Turner and Cullom; that they knew that Joseph Turner remained in possession, and had full notice of the written agreement between the parties; that this agreement *per se* showed the transaction to be fraudulent; that there was nothing paid for the transfer of the Cullom mortgage by Joseph Turner; that Tacy Turner, if she made any pur-

chase, paid for the land with her husband's means, or those which belonged to him in law. Cullom, Joseph and Tacy Turner, and the Campbells, are made parties respondent. This bill was filed February 27th, 1858, and the prayer is, that all of the conveyances and transfers made by or to said respondents may be set aside as fraudulent and void, and that complainant's title may be declared paramount, &c. Cullom was not personally served and did not answer. The other respondents answer, denying fully and specifically all the fraud set up in the bill. The transaction between Joseph Turner and Cullom, it is alleged, was honest and *bona fide*, and so of all the subsequent transactions and transfers. It is averred that Joseph Turner was, in 1838, indebted to John Campbell, which indebtedness in June, 1843, amounted to $314.73; that he was unable to pay, and in consideration of this indebtedness, and the further sum of $225.75 paid him, by John Campbell, he transferred and sold the Cullom debt and mortgage to him; that John Campbell was indebted to his son, A. Campbell, and sold the mortgage and debt to him, who, in his own name, foreclosed it in 1849; that at the sheriff's sale, under this decree, John Campbell bought the land and paid A. Campbell, and afterwards sold it to the wife, Tacy Turner, for $600, which sum she paid from her own means.

The cause was heard upon bill, answers, replications, exhibits and depositions, and the bill dismissed.

For other facts, so far as material, see the opinion of the court.

*James Grant* for the appellant.

I. The conveyance from Turner to Cullom was fraudulent and void, because the vendor stipulated in writing that he should remain in possession of the property, and receive the benefits thereof. *Twyne's Case*, 1 L. C. 1; *Hamilton* v. *Russell*, 1 Cranch. 107; *United States* v. *Hoe*, 3 Ib. 73; 1 Ird. Eq. 34; 10 Geo. 242; 2 Ib. 13, and the authorities there cited; 2 John. Ch. R. 565. A sale by a debtor, great-

ly embarrassed, of his property to a relative, without any reasonably apparent motive for the purchase, for payments postponed for five years is fraudulent. *Bibb* v. *Baker's Admr.*, 17 B. Monr. 292. A deed of conveyance made with a design to hinder and delay creditors, being absolutely void, is wholly inoperative, and will not afford any security to the grantee for a debt actually due him. *McKee* v. *Gilchrist*, 1 Watts. 230. A bill of sale, absolute on its face, where the vendor remains in possession, is *per se* fraudulent as to creditors. *Merritt* v. *Dawson*, 1 Humph. 561; *James* v. *David*, 14 B. Monr. 527; 1 N. H. 415; and *Johnson* v. *Dicks*, *Hill & McLain*, 23 Miss. 277, which is directly in point.

II. Possession is notice of the title under which the possessor holds the property. *Le Neve* v. *Le Neve*, 2 L. C. in Eq. 117, (top); 15 Ill. 540. A person in possession of premises is presumed in law to be the owner, or at least to have an interest which may be the subject of a sale under execution; and he can not in an action of ejectment set up an outstanding title in another. *Dickinson* v. *Smith*, 25 Barb. S. C. 103.

III. The judgment in foreclosure was rendered without jurisdiction. The recital in the judgment entry is the only evidence of the service of notice. "A recital to that effect is no evidence of notice, unless the officer's return shows it." *Bodworth* v. *Goodrich*, 1 Gray 508; *Webster* v. *Reed*, 11 How. 678.

IV. The whole transaction between Mrs. Turner and Campbell was void, not only because it was fraudulent, her husband being in possession, but because all the property, all her earnings were her husband's, and she was totally incapable of making a contract with Campbell on the subject. 26 Eng. L. & E. 193; 2 Kent. 109.

*Cook, Lindley & Clarke* for the appellees, reviewed the authorities cited by the counsel for the appellant. To the point that the conveyance by Turner to Cullom was not fraudu-

lent and void in law, because the grantor retained the pos-
session of the premises, they cited the following authorities;
*Bell* v. *Blaney*, 2. Murph. 171; *Kidd* v. *Mitchell*, 1 Nott &
McCord 334; *Jacks* v. *Tunno*, 3 Dessaus. 1; *Foster* v. *Pugh*,
12 Smed. & M. 416; *Coleman* v. *Bank of Hamburgh*, 2
Strob. 285.  To the point that the doctrine of Twyne's
Case is limited to sales of chattels and does not apply to
reality, 4 Mason C. C. R. 312; *The United States* v. *Hoe et
al.*, 2 How. 73.  To the point that a recital of due service
of notice in a judgment rendered by a court of general ju-
risdiction is sufficient to sustain the jurisdiction of the
court, *Morrow* v. *Weed*, 4 Iowa 77; *Cooper* v. *Sunderland*,
3 Ib. 114; *Carpenter* v. *Wade*, 4 Ib. 361; *Frazier* v. *Steen-
rod*, 7 Ib. 339.  The wife may purchase an estate in fee, without
the consent of her husband.  2 Kent. 134, Story Eq. Jur.
Sec. 1378.

WRIGHT, J.—We are clearly of the opinion that it was the
intention of Turner, when he made the deed of June 8th,
1843, and executed the written agreement of the same date
with Cullom, to defraud his creditors.  We further incline to
the opinion that Cullom participated in this fraudulent de-
sign, and if the controversy was now between complainant
and said Turner and Cullom, we should have but little diffi-
culty in concluding that complainant's title was paramount,
and in further declaring said deed of the 8th of June 1843,
fraudulent and void.  It is claimed however by the other
respondents, that whatever the fraud as between J. Turner
and Cullom, they are innocent of any such purpose and are
protected, therefore, in the enjoyment of the interest and title
subsequently acquired.  Their condition of innocence is de-
nied by complainant; and this is the first, and indeed we may
say material, issue presented for our consideration.

I. It is claimed by complainant that the fact of Turners'
remaining in possession after the sale to Cullom, and all the
time up to the commencement of this action, of which the
other respondents had full knowledge, so taints the transac-

tion with fraud, as to vitiate the subsequently acquired title of John Campbell, and that of his grantee Tacy Turner.

The doctrine of Twyne's Case, (8 Coke 80) adopted in some of the states, is applicable to sales of chattels, and we do not understand that any of the cases go so far as to apply the same rule to a sale of realty. The reason of the distinction it seems to us is most manifest. In the case of chattels, possession is *prima facie* evidence of ownership. Upon this evidence of ownership, in the absence of some provision in the registry laws of a state, creditors and subsequent purchasers without notice have a right to rely; otherwise there would be no protection against secret or collusive transfers. In this country while possession of lands may be treated for some purposes, and is regarded as the lowest evidence of title, yet the public look not to the possession but to the proper records, to obtain proofs of title to such property. The creditor does this, so does the subsequent purchaser, so does every person instituting an inquiry as to the condition of the title to a particular tract of land. The possession may with perfect consistency be in one person and the title in another. And to say that possession of the realty by the vendor after sale is *per se* either conclusive or presumptive evidence of fraud would be to abolish the distinction existing, known and acknowledged on all hands, between personal and real property, and to lose sight of the different methods adopted in this State and others, for evidencing the title to the two kinds of property. Without doing more we cite 4 Mason C. C. R. 312; *United States* v. *Hoe et al.*, 3 Cranch 73.

That such continuing possession, however, might properly be considered, in connection with other circumstances, in determining whether there was fraud in fact in this particular case, is equally clear. And how much weight it should or might have, would of course depend upon the circumstances under which it was held, the agreement by which it was reserved, the purpose and object of the vendor and vendee in providing for it, and many other facts not material to be now mentioned.

II. If the possession of Turner then was not such evidence of fraud as *per se* to give notice of the fraudulent purpose between him and his grantee, Cullom, we next inquire whether the agreement made on the same day can aid complainant's case.   And here we are met by the inquiry whether the other respondents had notice or knowledge of such instrument.   All knowledge of its existence is denied most positively and unqualifiedly by the Campbells.   This knowledge is neither admitted or denied by Tacy Turner.   The Campbells then by their answers deny all knowledge.   There is no evidence in the record to show notice in fact, and the recording was not constructive notice.   It was not one of the instruments, the recording of which under the laws then in force, (Laws of 1843, chapter 54, sections 29, 30 and 31,) imparts notice of its contents to other persons.   It was not acknowledged as required by the statute, and as a consequence the recording imparted no notice to purchasers or mortgagees.   We need not therefore inquire whether this instrument made such a reservation of an interest in the grantor, as made the transaction fraudulent and void on its face.   Whatever its effect between Turner and Cullom, it cannot vitiate respondents, title without evidence of notice of its contents.   And in this connection we may remark that while possession is notice, at least so far as to put the vendee upon inquiry, to ascertain by what right the occupant holds, this rule is not extended so far as to give notice of the *defects* existing in his title, nor yet of the defects in the title paramount to the person in possession.   In this case both parties claim under Turner.   In the absence of such fraud as shall affect the title of Campbell, Turner stands after his conveyance to Cullom, as a simple mortgagee.   Inquiry on Campbell's part at those places where he was only required to go would have developed this fact and no more.   An examination of the proper records would have shown only the deed to Cullom and mortgage to secure the purchase money.   This is all the law presumes he ascertained.   If he in fact had notice of the other instrument this should be proved

and not left to presumption. He had notice then that Turner was a mortgagee in possession. But this was no notice to him nor could any inquiry that he was bound to make give him notice that there were other defects in Cullom's title, nor yet that Turner had any title as mortgagee or otherwise which was liable to Suiter's execution.

III. Aside from the evidence deduced from the terms of the written agreement, and the fact that Turner continued in possession, we do not think there is sufficient evidence to bring the fraudulent purpose and intention of Turner and Cullom to John or A. Campbell. Of the written agreement as we have seen they had no notice. The continuing possession was a circumstance, which, when taken in connection with other facts might prove fraud. In itself it was not necessarily inconsistent with an honest purpose. The proof of other facts is not sufficient in our judgment to bring knowledge of their fraudulent purpose home to the other parties. If, therefore, John Campbell acquired a good title, this must prevail and enure to the benefit of Tacy Turner. And he had such title as we have seen for anything that occurred between Joseph Turner and Cullom, and it only remains to inquire, therefore, whether the objections urged against the legal proceedings under which he and Mrs. Turner hold, are all or any of them tenable.

IV. And first it is suggested that the court rendering the decree against Cullom and in favor of A. Campbell, had no jurisdiction. From the exhibits found in the record, these facts appear: The record entry (the decree in the case of *Campbell* v. *Cullom,*) recites, "And now comes the plaintiff in his own proper person, and it appearing to the satisfaction of the court that the said plaintiff hath caused a notice of the pendency of this petition, containing a brief statement of the object and prayer thereof, to be published in the *Davenport Gazette*, a newspaper published in the town of Davenport in said county of Scott, for six consecutive weeks from the 22d day of February, 1849, and the said defendant being called comes not, he makes default. It is therefore considered

by the court, &c." And then follows a decree of foreclosure in regular form, with an order for a special *fi. fa.* after the expiration of seventy days from the date of said decree. The court calendar then kept by the judge shows the cause docketed, with a memorandum in the hand-writing of the judge, that " defendant was defaulted and a decree of foreclosure." The sheriff's deed to John Campbell recites or refers to the decree, and the fact that a *fi. fa.* was issued, and the sale made in accordance therewith. A copy from the "judgment docket" shows the amount and date of the decree, with costs (including printers' fees); the nature of the writ, with a description of the land to be sold, corresponding with that contained in the mortgage, and now in controversy. And then follows a certificate of the clerk to the effect that " the original papers on file" (in said cause, naming it,) " can not after diligent search he found in his office."

Upon the authority of *Cooper* v. *Sunderland,* 3 Iowa 114; *Morrow* v. *Weed,* 4 Iowa 77; *Wade* v. *Carpenter,* Ib. 361; *Frazier* v. *Steenrod,* 7 Ib. 339; *McGahen* v. *Carr,* 6 Ib. 331; *Gaylord* v. *Scarff,* Ib. 179, we are clearly of the opinion that the jurisdiction sufficiently appears. There is no personal judgment; merely an order to sell the thing; the property mortgaged. The court acting was one of general jurisdiction. Every presumption obtains in favor of the proceedings of such courts as well as of their power to act—their jurisdiction. This presumption, necessary, reasonable and just as it is, would sustain the proceedings, aside from the recital in the decree, and the other facts which place the matter beyond all controversy.

But in this connection it is urged that Turner should have been made a defendant to the proceedings to foreclose the mortgage. The law then in force provided that the mortgagee might file his petition in the office of the clerk of the District Court against the mortgagor, and the actual occupant of the real estate, setting forth the substance of the mortgage deed, praying judgment for the debt, the foreclosure of the equity of redemption, and a sale of the property to sat-

isfy the amount found due. Acts of 1843, p. 442, section 4. Will a failure to make such occupant a party invalidate a title otherwise regular? We think not. It might have the effect of letting him in to redeem upon a bill filed for that purpose; or he might possibly complain and attack the decree for any collusion between the mortgagor and mortgagee, whereby he was injured. And so in various methods he might be entitled to relief, but we do not think a failure to make him a party is such a fatal defect or irregularity as to render invalid or void all the proceedings against the mortgagor. He might not be bound by them, but this is quite a different thing from holding that the proceedings are void, because he was not made a party. *Veach* v. *Schaup et al,* 3 Iowa 194. Turner does not complain nor ask relief in this case on this or any other ground. Whether Suiter as the purchaser at the sheriff's sale in November, 1844, would have the same right as Turner we need not determine, as we do not understand that he asks any such relief or predicates his case upon any such ground.

V. We are finally brought to the question whether Tacy Turner can hold the property under the purchase from John Campbell, against the claim of Suiter. And here we feel compelled to differ widely from counsel for the complainant in his construction of the testimony. We are not satisfied by any means that she paid for the land with the money of the husband, or that to which he was legally or equitably entitled. It is so averred in the bill we know, but it is positively denied in the answer, and the proof falls far short of overcoming such denials. Turner, from the evidence, is a man imbecile in mind, and physically unable to perform much labor; and this was his condition for years prior to the purchase from Campbell. During this time the wife and children superintended the entire business, and his labor and means aided but little, if any, in their support. The proof is that the wife paid for the land. There is some proof, it is true, that she used money made by her own labor on the farm, but there is just as much that she used means received by

her from her father's estate. That the husband, ever had this latter money in his possession, or exercised any control over it, or that he had anything to do with, or knowledge of, this purchase there is no proof whatever. In courts of equity it is conceded that a married woman is capable of taking real, as well as personal property to her own separate and exclusive use, and of holding and enjoying it independently of her husband. Story's Eq. Jur. section 1376, and see section 1387. And as to the doctrine under the Code and for this State see *Blake* v. *Blake*, 7 Iowa 46; *Chenvete et al.* v. *Mason*, 4 G. Greene 231; *McCrory* v. *Foster et al*, 1 Iowa 271.

Decree affirmed.