## Hatch & Thompson v. Gray *et ux.*

1. **Husband and wife:** CONTRACTS: EQUITY. At common law, courts of equity will, when the rights of creditors do not interfere, enforce agreements between husband and wife, and protect her rights thereunder: but a secret parol agreement between husband and wife will not be upheld and enforced against creditors whose rights have intervened in ignorance of such agreement.

*Appeal from Lee District Court.*

FRIDAY, JUNE 22.

THE defendants, R. P. Gray and Elizabeth Gray, are husband and wife, and were married prior to 1851. On

the first day of May, 1851, and while they were residing in Iowa, the wife was the owner and holder of a note for twenty-eight hundred dollars, made by a man in Cincinnati, Ohio. She acquired the note by descent from her father's estate, he having died in Ohio. On the date last mentioned she let her husband have the note and he went to Cincinnati and collected it. She testifies that "he did not give me a note, but there was an understanding between us that he was to pay me this money back whenever it was convenient for him to pay me, with ten per cent interest."

These facts appear alone by the deposition of the wife, Elizabeth Gray.

In September, 1859, the plaintiff obtained a judgment in the District Court of Lee county, Iowa, against the defendant and another, for about four hundred dollars, which is still unsatisfied.

In April, 1863, Elizabeth Gray purchased lot four in block one hundred, in Keokuk, and took the title in her own name. She obtained the money to pay for it with from her husband, who has twice failed in business since 1851, and has been insolvent ever since the rendition of the judgment. The money was acquired by her husband while acting as wagon-master, and afterwards as sutler to the Fifteenth Iowa infantry in 1862 and 1863; and was brought home by him, and deposited in bank to her credit, as she testifies, in part payment for the money collected by him on the note she let him have.

The plaintiffs by their suit ask to subject the lot to the payment of their judgment, and there was a decree below accordingly.

The defendants appeal.

*H. Strong* with whom is *D. F. Miller* for the appellants.

*Rankin & McCrary* for the appellees.

COLE, J.—At the time the wife delivered the note to the husband, and when he received the money thereon in Cincinnati, Ohio, in May, 1851, the rule of the common law as to the rights of property between husband and wife obtained, both in Ohio and Iowa. By that law the personal property and choses in action of the wife, vested absolutely in the husband, upon reduction to possession by him. By the Code of 1851, which took effect on the first day of July of that year, it was provided by section 1447, that "the personal property of the wife does not vest at once in the husband, but if left under his control it will, in favor of third persons acting in good faith and without knowledge of the real ownership, be presumed to have been transferred to him, except as hereinafter provided. See Revision, 2499. It is there provided by section 4448, Revision, 2500, "If the wife has such property which she leaves under his control, she must, in order to avoid the entire surrender of her interest, file for record with the recorder of deeds a notice stating the amount in value of such property, and that she has a claim therefor, &c. * * *" And by the ninth subdivision of section 26 (Rev., § 29), it is enacted that "the words personal property include money, goods, chattels, evidences of debt and things in action."

*1. HUSBAND AND WIFE: contracts: equity.*

It is not pretended in this case that any notice, or any other step such as that contemplated by the Code of 1851, has been taken by the wife so as to bring her claim within its provisions. Her claim rests upon the principles of common law as enforced in courts of equity, with such modifications as the enlightenment of the age has engrafted thereon, and reflecting to a greater or less extent the principles underlying the modern codifications of England and the American States.

Without reviewing at length the numerous cases involving similar questions as in this case, we refer to the following

as tending to afford much light in the decision of this, and as leading inevitably to the affirmance of the judgment below: *Reade* v. *Livingston*, 3 Johns. Ch., 483; *Hulme* v. *Tenant*, 1 Lead. Cas. in Eq., 394, and notes; *Wood* v. *Warden*, 20 Ohio, 518.

In many of these cases, the principle is recognized, that as between husband and wife, and where the rights of creditors do not intervene, courts of equity will enforce the agreements between them, and fully protect her rights thereunder. But it is believed that no case can be found recognizing the rule that a secret parol agreement between the husband and wife will be upheld and enforced as against creditors whose rights have intervened, in ignorance of such agreement.

Indeed, there would be but little safety to creditors, if the wife, upon her own unsupported testimony, could, after the lapse of twelve or fifteen years, or other time, insist upon a secret parol agreement with her husband to repay her all moneys received from her, and, basing her claim thereon, receive and hold, for their mutual benefit, his entire estate, and thus hold the creditors at defiance. Such a holding would open wide the door to unlimited frauds, and become the avenue for a train of perjury, injustice and wrong, which would overturn that equity heretofore meted out by courts of chancery, and subvert the beneficent purposes of our statute.

It is true that the husband's reduction to possession of the wife's choses in action, even by collecting the money upon them, does not always and invariably, even in favor of creditors, invest him with the absolute right to the money. For instance, if it was the intention of the husband, manifested by his declarations and acts, to collect the money *for* his wife, and he should immediately invest the same in other securities, in her name in good faith, the right of the wife thereto would not be affected

by the fact that the husband had been in actual possession of the money. 1 Pars. on Notes & Bills, 86, and authorities cited. In *Wright* v. *Wright*, 16 Iowa, 496, the proceeds of the sale of the homestead under the incumbrance, after satisfying the same, never came to the hands of the husband at all; but under the agreement, which was the consideration for the wife's joinder for executing the incumbrance, the notes taken for the surplus were transferred directly to her.

That case bears little or no analogy to this. The case of *McCrory* v. *Foster*, 1 Iowa, 271, rests on more nearly the same principle as this. See the authorities cited in that case.

Affirmed.

LOWE, Ch. J., dissenting.