## WRIGHT v. WRIGHT.

1. RES ADJUDICATA. A decree which ordered that a certain fund should be paid into court, but made no final disposition of the same, and granted to one of the parties leave to fill a bill, asserting a claim to the same within a time limited, does not·bind the parties as a prior adjudication of such claim.

2. SAME: DIVORCE. A decree in an action for a divorce which determined the claims of the wife arising out of the marriage relation to a certain fund, does not operate to estop her from claiming the same fund by an action founded upon a contract.

3. HUSBAND AND WIFE: POST-NUPTIAL CONTRACT. A contract between a husband and a wife which is supported by a sufficient consideration and is not tainted with fraud, is valid as between the parties and against the subsequent creditors of the husband.

4. SAME. When the legal title to the homestead lot was in the husband, but the improvements thereon were principally made with funds advanced by the father of the wife, for the purpose of securing a home for her, and when the wife concurred in the execution of a mortgage conveying the· same, under an express agreement with the husband that the proceeds of the property when sold should be applied, first to satisfaction of the mortgage, and the balance thereafter remaining should be paid to the wife, to be held by her in her own right, it was held, that the contract was binding against the husband and his subsequent creditors.

*Appeal from Scott District Court.*

THURSDAY, JUNE 23.

THE subject matter of this controversy was referred by the chancellor to a master who reported the facts found

by him, out of which the same arose, together with his conclusions of law thereon, as follows:

" *To the District Court of Scott County:* I, the undersigned, to whom the above entitled cause was referred by an order of said Court, to hear and determine the same and report my conclusions of fact and law, do hereby report that, in pursuance of said order, the said cause has been fully heard before me, and that I have heard the proofs and allegations of all the parties thereto, and the arguments of counsel for said parties respectively: That, upon said hearing, the plaintiff read in evidence the depositions of II. J. J. Jentsen, William E. Young, Isabella Wright and John L. Davies, taken for the plaintiff in this cause, and on file herein: That the defendants read in evidence the pleadings and decree in a suit in this Court, between Isabella Wright, plaintiff, and Alexander Wright, defendant, for divorce. Also the pleadings and decree in the consolidated causes of *Laura Clark and al.* v. *Alexander Wright and als.*, and *H. J. J. Jentsen* v. *Laura Clark and als.*, and the cross bills filed therein in this Court.

"Also the deed of assignment from Alexander Wright to Solomon Lombard, referred to in the pleadings; also an order by the District Court of Black Hawk county, transferring the proceedings on said assignment to the Scott County District Court; also, the promissory notes and mortgage executed by Laura Clark and William T. Clark to Alexander Wright, and referred to in the pleadings; also the deposition of Alexander Wright, taken for defendants, and on file herein; also, the deposition of Thomas Yarwood, taken in the said consolidated suits aforesaid, on the behalf of Alexander Wright, it being admitted by plaintiff that said Yarwood had since deceased; also, judgments on confession in this court, against Alexander Wright, in favor, respectively, of E. A. McNain, James Grant and Green & Co., being the same referred to in the

petition of intervention filed by said judgment creditors; also parts of the deposition of Isabella Wright, taken and on file in said consolidated suits, to wit, cross interrogations, Nos. 22 and 27, and the answers thereto; also, direct interrogatory No. 13, and the answer thereto in the deposition of H. J. J. Jentsen, taken and on file in said suit for divorce of Isabella Wright against Alexander Wright: That the foregoing was all the evidence introduced on the said hearing: That the several exceptions filed by the parties respectively to the depositions herein, were first heard and determined by me, and the same were sustained as to such parts of said depositions as are marked by me, "excluded," on the margin thereof, and overruled as to the remainder.

"And upon the said evidence I report the following as my *conclusions of facts*, to wit:

"1st. The plaintiff, Isabella Wright, and the defendant Alexander Wright were married in the year 1852. In the year 1854, said Alexander Wright, being the owner in fee of a lot on Brady street in the city of Davenport, known as lot No. 5, Goldsmith's addition. David Hardy, the father of said Isabella Wright, furnished to said Alexander Wright the sum of six hundred dollars, with the express understanding and agreement that the same should be used in the erection of a dwelling house on said lot; and that said house and lot should constitute a homestead for the said Isabella and Alexander Wright, but no other or further agreement as to the ownership or enjoyment of said real estate property was then made.

"2d. The said sum of money was accordingly employed by said Alexander Wright in the erection of such house; and said house and lot were afterwards used and occupied by said Alexander and Isabella Wright as their homestead, from July, 1854, till July, 1856.

"3d. In June, 1856, said Alexander Wright borrowed from H. J. J. Jentsen the sum of fifteen hundred dollars,

and Alexander and Isabella Wright joined in executing a mortgage to said Jentzen, to secure the payment of said loan upon said house and lot. Said money was borrowed for the purpose of enabling said Alexander Wright to go into mercantile business at Cedar Falls, in Black Hawk county, to which place said Alexander and Isabella Wright then intended to remove, in order that said Alexander Wright might so commence business there.

"4th. In July, 1856, the said Alexander and Isabella Wright did remove their residence from said Davenport to said Cedar Falls, with the intention of making the latter place their permanent residence, and of abandoning their former domicile at Davenport. And said Alexander Wright did go into business at Cedar Falls, and he and his said wife resided there together until February, 1857.

"5th. At or about the time of such removal, to wit, July 8, 1856, said Alexander and Isabella Wright joined in executing a power of attorney to Thomas Yarwood, authorizing and empowering him to sell and convey the said house and lot for such sum, and on such terms as to him should seem meet, and to relinquish said Isabella Wright's right of dower therein.

"In consideration of the said Isabella Wright's joining in the execution of said power of attorney, it was then verbally agreed between said Alexander and Isabella Wright, that the surplus of the purchase-money or proceeds of said premises, when sold by said Yarwood under said power over and above the amount necessary to satisfy and discharge the said mortgage thereon to said Jentzen, should belong to, and be, the property of the said Isabella Wright.

"6th. Under and in pursuance of said power of attorney, said Yarwood, on or about February 2d, 1857, as the attorney of Alexander and Isabella Wright, sold and conveyed the said house and lot to Laura Clark, and applied that part of the purchase-money, paid in cash, in satisfying

and discharging the said mortgage to Jentsen, and for the balance of the purchase-money, took two promissory notes, made by said Laura Clark and William T. Clark, her husband, payable to the order of said Alexander Wright, dated February 2d, 1857, each for the sum of six hundred and seventy-five dollars ($675), with interest thereon at ten per cent per annum, and payable, the one in one, and the other in two years after the date thereof. And the said Laura Clark, at the same time executed to Alexander Wright a mortgage upon the said house and lot, to secure payment of the said promissory notes.

"7th. Said Yarwood shortly after receiving said promissory notes, and in the month of February, 1857, indorsed the same, "Alexander Wright, by Thomas Yarwood, his attorney in fact," and delivered them to said Isabella Wright. But this was done without the knowledge or consent of said Alexander Wright.

"8th. On the 21st day of March, 1857, said Alexander Wright being insolvent, executed a deed of general assignment of all his property not exempt from execution, including said two promissory notes made by Laura and William T. Clark to the defendant Solomon Lombard, in trust, for the benefit of his creditors.

"9th. The said note of Laura and William T. Clark, due in one year after date, was, before maturity thereof, indorsed and transferred by said Isabella Wright to said Jentsen, as security for an advance of money, made by him to her. After the rendition of the decree in the consolidated suits, hereinafter set forth, said note was re-transferred by said Jentzen to said Isabella Wright.

"10th. On or about March 29th, 1859, said Laura and William T. Clark filed their petition of interpleader in this court, making said Alexander and Isabella Wright, Solomon Lombard and Jentsen parties defendant thereto, setting forth the making of said note and mortgage as aforesaid,

and alleging that each of said defendants claimed to be entitled to the same, and offering to pay the amount due thereon into court, and praying that said defendant might interplead as to their rights thereto.

"In said suit each of said defendants filed an answer and cross bill, said Lombard and Alexander Wright both, respectively, claiming to be entitled to said notes and mortgage, and said Alexander Wright praying for a foreclosure thereof for his own benefit.

"Said Jentsen claimed to be entitled to said notes so transferred to him by Isabella Wright, as indorsee thereof; and said Isabella Wright claimed to be entitled to said notes, as against Alexander Wright and his said assignee upon the ground that she contributed largely of money, furnished her by her father, towards the erection of the house on said lot, and that said Alexander Wright agreed, in consideration of her executing the said power of attorney to Yarwood, that she should receive the surplus proceeds of said property over and above the amount of the incumbrances existing thereon; and alleged the said transfer of one of said notes by her to said Jentsen and her own continued ownership of the remaining note.

"Afterwards, to wit, on or about November 17th, 1860, said H. J. J. Jentsen commenced a distinct suit in this court for the foreclosure of said mortgage, alleging himself to be the indorsee of said note, and making Laura Clark, Solomon Lombard, Erastus Ripley, Henry Miller and Sebastian Miller, parties defendant thereto. Afterwards, by an order of this Court, said suits were consolidated, and such proceedings were had therein that, at the August term, 1862, a decree was rendered in said consolidated suits, of which a copy is hereto annexed and made part of this report, marked exhibit 'A.' Said Laura and William T. Clark, having failed to pay the amount specified in said decree, as founded therein, a special execution was issued thereon,

under which the said house and lot were sold by the sheriff, October 4, 1862, and the proceeds thereof less the costs and expenses of such sale, amounting to the sum of two thousand one hundred and twenty-nine $\frac{45}{100}$ dollars, were paid into court, and constitute the subject matter of the present suit.

"11th. On or about January 14th, 1860, said Isabella Wright commenced a suit in this Court against said Alexander Wright, praying for a divorce from the bonds of matrimony, and for alimony, alleging, as grounds therefor (among others), desertion and abandonment and failure to maintain her by said Alexander Wright from and after February, 1857, and also habitual drunkenness on his part.

"By an amended petition, filed in said cause October 15th, 1860, said Isabella also claimed to be entitled to the amount due on said note from Laura and William T. Clark, but without setting up the particular grounds of her claim, and prayed, in addition to a divorce, that the same might be decreed to be paid to her. Said Alexander answered said petition, and afterwards, upon a hearing of said cause upon pleadings and proofs, a decree was rendered therein, dismissing the plaintiff's petition.

"And, upon the facts thus found, I report the following as my *conclusions of law*, to wit:

"1st. That said Isabella Wright is not barred nor estopped by the said decree, rendered in said consolidated suits, from setting up the claims and grounds of claim in her petition herein contained, or any of them.

"2d. The said Isabella Wright is barred and estopped by the said decree in her said suit of divorce, from claiming the said fund, in court, by reason of desertion or abandonment or failure to maintain her, or other misconduct of her said husband Alexander Wright, but not from claiming it on any other ground.

"3d. Said Isabella Wright has voluntarily relinquished her homestead right in said house and lot, and is not enti-

titled to said fund, or any part thereof, by reason of its being the proceeds of her homestead.

"4th. Said Isabella Wright did not become entitled to any separate estate or interest, legal or equitable (other than the right of homestead, as defined by law), in the house and lot, by virtue of the facts stated in my *first* and *second conclusions* of fact, as hereinbefore set forth, and she is not entitled to the said fund or any part thereof in consequence, or by virtue of said facts.

"5th. The agreement between said Isabella Wright and Alexander Wright, stated in my *fifth* conclusion of fact, as hereinbefore set forth, is valid and binding in equity as between said parties thereto. And said Isabella Wright is entitled, by virtue thereof, as against said Alexander Wright to the whole of said fund in court.

"6th. Said Isabella Wright has the same rights to said fund as against said Solomon Lombard, assignee of Alexander Wright as aforesaid, and the creditors of said Alexander, as she has against said Alexander Wright.

"7th. A decree should be entered, declaring said Isabella Wright to be entitled to the whole of said fund in court, and ordering the same to be paid over to her, and that she recover her costs; and that the cross petition of the several defendants hereto be dismissed with costs.

"JOHN N. ROGERS, Referee.

"Dated November 4th, 1863."

This report was approved by the Court below, and a decree rendered in accordance therewith, from which respondents appeal.

*J. W. Thompson* and *Grant & Smith* for the appellant, Lombard.

I. If the wife leaves her separate personal property in the possession of the husband, without filing for record the

notice contemplated by section 2500 of the Revision of 1860, it becomes liable for the payment of his debts. *Odell & Updegraff* v. *Lee & Kinnard*, 14 Iowa, 412; *Smith* v. *Hewett*, 13 Iowa, 94.

II. To sustain a settlement of personal property on the wife, the consideration must be adequate. 2 Kent, 174; *Lady Arundel* ·v. *Phillips*, 10 Ves.; *Bullard* v. *Briggs*, 7 Pick., 533.

III. A parol agreement between the husband and wife is not valid against the creditors of the husband or an assignee, as to debts contracted before notice was filed for record, as required by the statute. *Odell & Updegraff* v. *Lee & Kinnard, supra.*

*James S. Lane* for the appellee.

I. The agreement between complainant and her husband, that the surplus proceeds arising from the sale of the homestead after paying the mortgage, should be hers, is valid in equity against Wright. 2 Story Eq. Jur., §§ 1373 and 1377 *a*. The intervention of a trustee is not necessary. *McCrory* v. *Foster*, 1 Iowa, 278; 2 Kent, 162; *Livingston* v. *Livingston*, 2 John. Ch., 537; *Garlick* v. *Strong*, 3 Paige, 440; *Ogden* v. *Giddings*, 15 Tex., 485.

II. The assignee takes only such rights as the assignor had. Story Eq. Jur., § 1038; 2 Kent, 173.

III. The former decrees were not a final adjudication of the precise question raised in this case.

LOWE, J.—We are of the opinion, that in all material particulars, the foregoing report is a sound and correct exposition of the facts and law of this case; and that the decision thereon by the Court below ought not to be disturbed.

It is so full, explicit, and satisfactory in its facts and legal conclusions, that it would seem to be a waste of time to attempt a detailed demonstration of its general accuracy;

hence, we shall limit ourselves to a very few concurring observations.

The exclusion by the referee of a portion of the evidence of John L. Davies respecting certain statements made to him by David Hardy, the father of the plaintiff, and which occupied so considerable a share of the discussions at bar, need claim no attention at our hands, as the decision below was, and must be here, irrespective of said testimony, in favor of the party complaining of such exclusion.

Secondly. The argument of the defense, that the plaintiff is estopped from setting up the claims which she is prosecuting in this suit, by the decree rendered in the consolidated suits mentioned in the report, and also, by her former action for divorce and alimony, was properly overruled, in that the first named decree aforesaid not only does not in terms conclude her rights in any manner, or determine what should be done with the fund in controversy, when paid into court, as ordered; but on the other hand, the decree itself expressly grants her leave, within a certain fixed time, to file her petition, setting up any claim she might have to any part of said fund.

It is true that it is specified she is to do this, " as the wife of Alexander Wright," but this qualification is believed to have been accidental; at all events, without more, it could hardly have the effect to prevent a suit in her own right.

Again, as it respects the divorce action, it may be conceded that, so far as the plaintiff's claim to the fund is founded upon her right to a divorce and alimony, on account of desertion and a failure to maintain her, that the same is barred, but that she is not estopped from claiming it upon other grounds, and especially the one upon which it is awarded to her in this proceeding.

We waive all commenting upon the plaintiff's claim to the fund in question, as founded upon or derived from her homestead rights, inasmuch as we are quite satisfied from

the evidence that her removal with her husband to Cedar Falls in Black Hawk county, was intended to be permanent, and, therefore, an abandonment in law of her homestead in Davenport. This abandonment was afterwards made complete, not to say conclusive, by sale of the same under a power of attorney, jointly executed by her and her husband.

Prior to their removal to Cedar Falls, namely, in June, 1856, Alexander Wright, husband of plaintiff, borrowed of H. J. J. Jentsen the sum of $1,500, secured by a mortgage jointly executed by Alexander and Isabella Wright, on their homestead. The object of effecting this loan was to enable Alexander to start in business at Cedar Falls. About the time of their removal, to wit, in July, 1856, they also joined in executing a power of attorney to Thomas Yarwood, authorizing him to sell and convey their home property, in Davenport, for such price, and on the terms he might think proper, and to release said Isabella Wright's dower interest therein.

In connection with, and at the time of the execution of this power of attorney, the referee found, from the evidence, that there was a contract made and entered into between Alexander and Isabella Wright, to the effect that, in consideration the said Isabella would unite in the execution of said power of attorney, and consent to a sale of their home property, that the excess or surplus in the sale thereof, after extinguishing the $1,500 mortgage to Jentsen aforesaid, should belong to and be her property. This excess turned out to be $1,350, exclusive of the accruing interest, and is the fund constituting the subject of this controversy, the plaintiff, Isabella Wright, claiming it on the one hand, and Alexander Wright and his creditors setting up a right to it on the other.

We suppose, unless the plaintiff can deduce her right to

it from the contract just mentioned, her claim must fall to the ground.

As to the existence of this contract, and whether as a matter of fact it was entered into between the parties, we think the evidence sustains the finding of the referee in the affirmative. We are not aware of any principle of law, nor do we discover anything in the facts, which could legitimately impeach its validity.

There seems to be an entire absence of any circumstances indicating a fraudulent purpose on the part of either of the contracting parties. At the time the agreement was made there were no creditors except Jentsen the mortgagee. By the terms of the contract he was to be paid out of the first proceeds of the sale of the property. If the contract was lawful and valid as against Alexander Wright, subsequent creditors of his have no right to complain.

We inquire then, what should vitiate the contract as between Isabella and Alexander. It cannot be urged that there was no adequate consideration to uphold it. At the time it was entered into, they were occupying their property on Brady street, in Davenport. It was then their homestead, and although the legal title to the same was in Alexander, yet the evidence shows that much of her means derived from her father (David Hardy) went towards the improvement if not the purchase of the property. It was her province to refuse either to encumber or relinquish her dower interest in the property, yet, in obedience to his wishes, she consented to do both, but for a consideration stipulated and agreed upon at the time, namely, that whilst Alexander was to have the $1,500 borrowed, and which was to be refunded out of the first proceeds of the sale, she was to have the residue, which turned out to be less than the amount received by him, and perhaps relatively less than her proportion of the means which she furnished in the purchase and improvement of the property would

entitle her, so that, in making the contract aforesaid, she parted with equities which to her were of a substantial character—equities which should render the contract sacred and binding upon the parties, and which a court of equity ought not to permit Alexander Wright, setting up an adversary claim to the fund in question in the face of his contract, to disregard and trample under foot. *Garlick* v. *Strong*, 3 Paige, 440; *Livingston* v. *Livingston*, 2 Johns. Ch., 537; *Blake* v. *Blake*, 7 Iowa, 46.

We deem it unnecessary to extend remark on this subject. We are content with the disposition which the court below and the referee have made of other questions not adverted to. Our object was simply to state some general considerations for approving the decision below, as founded upon the very able, clear and satisfactory report of the referee.

Affirmed.