LOGAN v. HALL, Adm'r.

1. **Practice:** JUDGMENT ON AGREED FACTS. Pending the trial of a cause on appeal to the District Court from an order of the County Court, disallowing a claim against an estate, "to save expenses and to simplify the issue, the facts were agreed upon by the parties, upon which the court should render judgment;" *Held*, That it was the duty of the court to render such judgment, whether legal or equitable, as the facts agreed upon should require.

2. **Husband and wife:** SEPARATE PROPERTY. Under our statute, money belonging to the wife at the time of the marriage, does not by operation of law become the husband's; but the wife may *give* her money to her husband so as to bar herself of any claim thereto, either in his lifetime or after his death.

3. ——— PROMISSORY NOTE BY HUSBAND TO WIFE. Promissory notes executed by the husband to the wife for money borrowed of her and belonging to her separate estate, are, under our statute, valid and binding, and may be enforced against his legal representatives after her decease.

4. —— RIGHTS IN EQUITY. Independently of the statute, such a contract would not, in consequence of the marital relations of the parties, be valid *at law;* but in equity the wife might become the creditor of her husband by acts and contracts during coverture; and her rights under such contracts will be enforced as against him and his legal representatives.

5. —— INTEREST. The general rule in equity is, when the wife has a separate estate (including money) which she permits her husband to use, and there is no stipulation that interest shall be paid for the use of it, the law will presume, in the absence of any circumstances showing a contrary intention or understanding, that the husband should not account for or pay interest on the funds. But if from the mode of dealing there be any circumstances from which it may reasonably be inferred that it was the intention of the parties to charge interest, then the husband is rightfully and properly chargeable therewith.

*Appeal from Wapello District Court.*

TUESDAY, JANUARY 16.

POST-NUPTIAL CONTRACTS, WHEN VALID: RIGHTS OF MARRIED WOMEN,: UNDER STATUTE AND IN EQUITY: WIFE MAY BECOME A CREDITOR OF HER HUSBAND, &C. — The plaintiff is the widow of William Logan, deceased. The defendant, Hall, is the administrator of the said William, and the other two defendants, who intervened, are his heirs-at-law, by a former wife. After the plaintiff's marriage with the intestate, the latter executed to her a note as follows: . " One day after date, for value received, I promise to pay Hannah Logan $320, for value received of her, this March 2d, 1,857. Signed, WM. LOGAN."

On the 28th day of January, 1859, he executed to his wife another note of like tenor with the above, for $400. After the death of her husband, the plaintiff filed these notes in due form of law, in the County Court, for allowance against the estate of her husband. The administrator and heirs-at-law, defended, and the claim was disallowed

by the County Court. An appeal was taken by the plaintiff to the District Court. Pending the cause in the District Court, the parties agreed upon the following facts:

" For the purpose of saving expense, and to simplify the issue herein, the following statement of facts is agreed upon by the parties, upon which the court shall render judgment:

" It is admitted that the claimant, Hannah Logan, and the deceased, William Logan, were legally married to each other, and lived as husband and wife until the death of said William; that said intermarriage took place in the year 1852 or 1853, and that they lived their entire married life together in said county of Wapello until the 9th of March, 1865, when the said William died in said county intestate, and the said William R. Logan and Sarah J. Varner, who intervene herein, are the only son and daughter of the said deceased by his first wife, deceased.

"It is further agreed, that at the time of the said intermarriage of the said claimant with deceased, she was possessed, in her own right and of her own means, of some personal property other than money, and also of the sum of eight hundred dollars in money; that at different times after the marriage, and during the course of several years thereof, before the execution of the notes attached to the petition of claimant, she advanced of her said money at different times several different sums, amounting in the aggregate to seven hundred and twenty dollars; that the advancement of said money was not *intended by her as a gift. nor did she surrender it as such*, but in good faith, with the expectation *and promise that it was to be repaid to her*, and that the notes attached to the petition of claimant were some time after (several years) executed by deceased to claimant therefor.

" It is further admitted that the said William R. Logan and Sarah J. Varner are not creditors of the said estate,

and are only heirs thereof, and as such they base their right herein. And that the fact of the execution of said notes, or that claimant (their stepmother) held them against their father, was not known to them till after his death.

"It is further admitted that most, if not all the articles of said personal property other than money possessed by claimant at time of marriage were claimed by her at his decease, were not administered upon as assets, and are now held by her in her own right; and that at the time of the death of deceased, and at all times after said marriage, he owned only about the same amount of property that he did when married to claimant, including fifty-seven acres of land, forty of which comprises a comfortable homestead (with a good house thereon, erected since said marriage), now occupied and held by claimant as such homestead.

"It is further admitted that said claimant never filed the statement as provided in section 2500, chapter 101, of the Revision, to prevent the surrender of her interest.

"If, upon the statement of facts, the court should be of opinion that the claimant has no right to recover herein, then she is to be nonsuited, and pay the costs herein; but if the court shall be of opinion that she is entitled to recover, then it is submitted to the court what amount she shall have judgment for, how it shall be paid, and what order shall be made as to the costs. Saving and reserving to each party the right of appeal.

"HENDERSHOTT & BURTON, *for the plaintiff.*
"EDWARD H. STILES, *for the defendant.*"

From this judgment of the District Court the administrator and heirs appeal.

*Edward H. Stiles* for the appellants.

*Henderson & Burton* for the appellee.

DILLON, J. — I. The defendants make the point that the court below was bound to decide the case as one at law; therefore, if the plaintiff was equitably but not legally entitled to recover, this would not avail her in this proceeding, but she must file her petition in chancery. "To save expense, and to simplify the issue, the *facts* were agreed upon by the parties, upon which the court should render judgment." The parties, in effect, said to the court, "these are the facts, and now we wish judicially to know what are the rights of the parties thereunder." It was the duty of the court, and we doubt not so understood by the parties, to give such judgment, whether legal or equitable, as the facts agreed upon should be deemed to warrant or require. This was the view of a similar question taken in *Braught* v. *Griffith*, 16 Iowa, 26, 35, and see 22 Wend., 526.

*1. PRAC-TICE: judgment on agreed facts.*

II. We will first briefly view the cause in the light of the statute.

The money of the plaintiff was not obtained from her deceased husband, but was possessed by her, in her own right, at the time of her intermarriage with him. It was therefore, her *separate property*. Under our statute, this money did not, as at common law it would have done, vest, upon the marriage, and in consequence of the marriage, in the husband. Rev., § 2499 *et seq.; Jones* v. *Jones*, at present term, where the statute is construed.

Under our statute this money would, by *mere operation of law*, never become *his*. She could *give* it him so as to bar herself from any claim thereto, either in his lifetime or after his death. *McCrory* v. *Foster*, 1 Iowa, 271. In point of fact she did not *give* the money to her husband, but let him have it "in good faith, with the expectation and *promise that it should be repaid to her.*" In execution of this promise, the husband afterwards made and delivered to his wife the notes in suit.

*2. HUSBAND AND WIFE: separate property.*

These notes, as above remarked and shown, were her separate property. Rev., §§ 2500, 2502, 2505, 2949; *Jones* v. *Jones, supra.*

By the statute (§ 2505), the wife may make "contracts in relation to her separate property." If she had loaned her money to a third person, instead of her husband, the contract would have been valid, and under another section of the statute (2771), could have been enforced by suit in her own name, without joining her husband.

3. —— promissory note by husband to wife.

Under our statute, it is clear that she may loan the money to her husband, and that his obligation to repay it will be binding upon him. Whether this obligation can, during the coverture, and while the parties are living together, be enforced by *an ordinary action at law,* is a question which the record does not present. Yet there is much force in the following observations of the Revisors (note to § 2771, by Mr. Darwin): "The substantive laws of Iowa, with justice, and but proper humanity, concede to married women certain rights in property. These rights, to be of any value, must be accompanied with adjective rights, which will secure their enjoyment. The right to sue, follows necessarily, from right of property."

But where, as in this case, the marital relation is dissolved by the death of the husband, we see no reason why the widow may not maintain an action directly on the notes against the administrator without formally resorting to a bill in equity. This may well be so, and yet the established rules and presumptions of courts of equity, founded on reason and the nature of the marital relation, may still be applicable.

We have above endeavored to show that the right of the plaintiff to recover was, upon the various provisions of our statute, relating to the property and rights of married women, beyond reasonable dispute. We now proceed to

Logan v. Hall.

show that if we had no such statutes, and if the decision of the cause depended upon the general principles of law and the authority of adjudicated cases elsewhere, the same result would be reached.

We admit that without our statute such a contract as the present would not, in consequence of the marital relation,

4. ‾‾‾‾ rights in equity.  be valid *at law*. But in a court of equity it is different. And precisely it was, because at law a married woman could not make or enforce such contracts, that courts of equity interposed, and wisely and humanely drew such cases from the law courts into their more enlightened and liberal jurisdiction.

In the annals of English and American jurisprudence, there is, perhaps, nothing which more worthily challenges and fixes the unqualified admiration of the jurist, than the history of the peculiar jurisdiction which courts of equity early claimed and exercised, and the peculiar protective remedies which these courts afforded to married women.

It is a history of the triumphs of justice over arbitrary and technical principles of the common law, in cases where the application of these principles would, in the particular instance, produce manifest oppression, hardship or injustice, while the common law disabled the wife and denied to her substantive rights of property, and all civil remedy against her husband. Yet courts of equity recognized to a limited extent (thus, in the rigorous days of the common law adumbrating the modern and more ample legislative rights secured to married women), both her separate existence and her separate rights of property. The settled doctrine of equity on this subject is very succinctly and clearly stated by Mr. Story (Eq. Juris., § 1373): "The wife may become a creditor of her husband by acts and contracts during coverture; and her rights will be enforced against him and his representatives.

This familiar doctrine was, by this court, recognized and

applied in the recent case of *Wright* v. *Wright*, 16 Iowa, 496, in which a *post-nuptial* contract, between husband and wife, fairly made, founded upon a sufficient consideration, was held valid and binding upon the parties. And the same principle was asserted in the prior case of *Blake* v. *Blake*, 7 Iowa, 46; and see *Jones* v. *Jones*, *supra*, and authorities cited; *Sunderland* v. *Sunderland*, *ante*, *Garlick* v. *Strong*, 3 Paige, 440.

And we lay down the rule, as fully warranted by the authorities, that where the husband borrows the wife's *separate* money, and promises to repay it, equity, especially where the promise is reduced to writing, and the rights of creditors are not prejudiced or defeated, will enforce this contract against him, or if he has deceased, against his estate.

A leading case, applicable to the subject in hand, is *Stanning* v. *Style*, 3 P. Wms., 337, which was this: The husband had voluntarily allowed his wife, after marriage, to make a profit from the sale of poultry, &c., belonging to the husband, with the understanding (which was not reduced to writing) that such profits should be *her own*. In this way she accumulated £100, which she loaned to her husband, and the chancellor decreed that, to this extent, she should stand as a creditor of her husband's estate.

In *Huber* v. *Huber's Adm'r*, 10 Ohio, 371, 1841, which is analogous in its facts and identical in principle with the case at bar, the wife was in possession of money received from the estate of a former husband. Her second husband requested her to let him have the same, which she did upon receiving the following note:

"Due Elizabeth Huber, on demand, $100, for value rec'd. Sept. 12, 1831.

"JOHN HUBER."

After the death of her husband, the wife brought her suit in chancery against her husband's administrators to compel the payment of this money, and it was adjudged that the note was enforceable in equity against the husband's administrators, though void at law.

The above case was followed and its principle somewhat extended in the subsequent case in the same court, of *Sally Wood* v. *Warden, adm'r* (of her husband's estate), 20 Ohio, 518, 1851, where the plaintiff (the wife of the defendant's intestate), during coverture collected the sum of $100 from sales of milk and for labor performed in washing for persons out of the family. To pay a street assessment upon *his* property, he borrowed the money and executed and delivered to his wife a note or memorandum as follows:

"AUGUST 16, 1847.

"Elisha Wood received of Sally Wood, his wife, $100 with interest at 6 per cent yearly as long as she lives, and if he dies first, this note is to be paid to her or her heirs, extra of her thirds. ELISHA WOOD."

This was held valid in equity, and the husband's administrator was ordered to pay the same from the assets of the estate, which, as in the case at bar, was solvent. There were, therefore, no rights of creditors standing in the way.

In contests between the wife and a creditor of, or purchasers from her husband, if she suffers her property to pass under his dominion or control, it may be necessary to file and have recorded the notices required by the statutes, as was held in the cases of *Smith* v. *Hewett*, 13 Iowa, 94, and *Odell and Updegraff* v. *Lee and Kinnard*, 14 Id., 411, but not so in contests between herself and husband or his administrator or heirs. *Jones* v. *Jones, ante.*

We remark upon *McMullen* v. *McMullen*, 10 Iowa, 412,

relied upon by the appellant, that it was decided under the Code of 1851, since which time the remedial rights of the wife have been enlarged (Rev., § 2771), that the nature of the wife's rights to the property sued for, and the relative rights of the parties did not very clearly appear, and that the relation of husband and wife still existed, in all of which respects, it is distinguishable from the case now under consideration.

One point made by appellant yet remains to be noticed, 5. — inter- and that is, that the court should, at all events, est. have disallowed interest to the plaintiff.

The rule adopted by courts of equity respecting the obligation of the husband to pay interest for the use of her money, is thus stated: "Whenever the wife has a separate estate (including money) which she permits her husband to use, and there be no stipulation that interest shall be paid by him for the use of it, the law will presume, in the absence of any circumstances showing a contrary intention or understanding, that the husband should not account for or pay interest on the funds; but if, from the mode of dealing, there be any circumstances from which it may reasonably be inferred that the intention of the parties was to charge interest, then the husband is rightfully and properly chargeable therewith," as where he borrowed his wife's moneys and lent them to a mercantile firm of which he was a member. *Roach* v. *Bennett*, 24 Miss. (2 Cush.), 98, 1852.

The same rule, in substance, is thus stated in a late work: "If the wife permits the husband to use her *separate* estate, he will not be liable for interest, unless there is an agreement to that effect, express or implied, from the mode of dealing." Tiffany and Bullard on Trusts, 688. That interest will be disallowed in cases like the present, against the husband's representatives, see *Squire* v. *Dean*, 4 Brown's Ch., 326; Clancy on Hus. and W., 272, 276;

*Powell* v. *Hankey,* 2 P. Wms., 82; Story's Eq. Jur., § 1396, and authorities cited; *Howard* v. *Digby,* 8 Bligh (N. S.), 224.

In the case at bar, there is no express agreement to pay interest. There is none to be implied from the mode of dealing, there being no evidence on that subject. There is no evidence that the husband made any profit out of the money borrowed, and it is more than probable, from the agreed statement, that the wife's money went into homestead, or was used for family expenses. The long length of time intervening between the date of the notes and the death of the husband, favors, to some extent, the notion that the wife did not intend to insist upon, or waived the payment of the interest. Courts of equity, in such cases, infer the waiver of payment by the wife, or her acquiescence in the non-payment; for these courts, as the above authorities show, apply in this respect different rules, and indulge different presumptions in cases where the transaction is between husband and wife, than where it is between strangers.

Again, the statute (Rev., § 2500) allows a wife to become a preferred creditor of the husband, but *without interest,* and it would not seem a departure from its spirit to disallow interest, especially where it would be more equitable to do so than to allow it. And such a case we deem the present. If, as is probable, the money sued for went into the homestead; this, consisting of forty acres of land, the wife enjoys, and is entitled to enjoy, during her life, and there is left only seventeen acres for the heirs, if, indeed, this shall not be required to pay the judgment rendered in this case.

The case is a hard one on the children of the husband, and the majority of the court (WRIGHT, J., not wishing to be concluded on this point if it should again arise) deem it entirely allowable under the authorities above cited, as

under the circumstances, it is most undeniably equitable to disallow a recovery of interest on the notes during the lifetime of the husband. Interest from the death of the husband will be allowed. The judgment entered below, with this modification, will be affirmed at the costs of the appellee.

Modified and affirmed.