MIRANDA J. WEBSTER *vs.* JAMES WEBSTER.

*Promissory note—action on by divorced wife against former husband.*

A woman, after a divorce *a vinculo*, may maintain an action against her former husband, on a promissory note given by him to her in 1861, during coverture, for money borrowed of and belonging to her.

ON EXCEPTIONS to the ruling of *Goddard*, J., of the superior court for the county of Cumberland.

ASSUMPSIT on a promissory note, dated Jan. 22, 1861, "signed in the presence of an attesting witness," and given by the defendant to the plaintiff, for fifty dollars and interest.

The action was tried by the justice without the intervention of a jury, subject to exceptions.

The justice found, as fact, that at the time of making the note, the defendant was the husband of the plaintiff, cohabiting as husband and wife; that he borrowed and received the sum for which the note was given from his wife at its date; that the money was

hers, being the proceeds of property belonging to her at the time of their intermarriage; that they continued to live together until March 27, 1869; that at the October term, 1869, of this court, and before the commencement of this suit, the plaintiff was divorced from the bonds of matrimony between her and the defendant, on a libel filed by her at that term, and that nothing has been paid on the note.

The presiding justice ruled as matter of law:  .

" That a woman after divorce may commence and maintain a suit against her former husband, on a note given by him to her during coverture, for money borrowed of her and unpaid."

To this ruling the defendant alleged exceptions.

*Deane & Verrill*, for the defendant.

1. At common law, husband and wife are not competent parties to a contract; and the promise of either to the other for payment of money is a nullity. *Lewis* v. *Lee*, 3 B. & C. 291; 2 Kent, 107, 109; *Jackson* v. *Parks*, 10 Cush. 550; *Sweat* v. *Hull*, 8 Verm. 187; *Davis* v. *Millet*, 34 Maine, 429; *Patterson* v. *Patterson*, 45 N. H. 164.

2. The contract, or note, in this suit is void, and cannot be enforced in law. *Lord* v. *Parker*, 3 Allen, 127; *Ingham* v. *White*, 4 Allen, 412; *Smith* v. *Gorman*, 41 Maine, 405; *Crowther* v. *Crowther*, 55 Maine, 358; *Edwards* v. *Stevens*, 3 Allen, 315; *Turner* v. *Nye*, 7 Allen, 176; *Phillips* v. *Frye*, 14 Allen, 36.

*W. H. Vinton*, for the plaintiff.

APPLETON, C. J. The parties to this suit were husband and wife. While the marital relation subsisted between them, the defendant borrowed of the plaintiff money, which she owned in her own right, and gave his promissory note therefor.

The defense rests upon the ground that the note is absolutely void, because given during the existence of the marital relation between the parties.

By the common law, marriage is an absolute gift to the husband

of all the goods, personal chattels, and other personal estate, of which the wife is actually or beneficially seized at the time in her own right, and of· such other goods and personal estate as come to her during the marriage. The husband, however, was not absolutely entitled to the choses in action of his wife, unless reduced into possession during her life. The money of the wife, received from her by the husband, at common law, became his.

But the statutes of this State have made great and important innovations upon the rules of the common law. By R. S., 1857, c. 61, " a married woman of any age may own in her own right real and personal estate acquired by descent, gift, or purchase, and may manage, sell, convey, and devise the same by will, as if sole, and without the joinder or assent of her husband." Since March 22, 1844, " a husband by marriage . . . acquires no right to any property of his wife. . . . A married woman may release to her husband the right to control her property, or any part of it, and to dispose of the income thereof for their mutual benefit, and may in writing revoke the same."

The rights of the wife thus conferred are utterly at variance with those she possesses at common law. Her property is secured to her " in her own right." The right to " manage, sell, convey, and devise " her property of every description " as if sole," includes all the rights of ownership. The words used are most general. If sole, she might loan, sell, or convey, as in her judgment should seem most advisable. The husband acquires no right to any of her property, but she may intrust its control to him, and if dissatisfied with his management, may revoke his authority. She has entire and exclusive authority over her own estate, and he has none. As to her property she is as if sole.

Before the passage of the statutes conferring rights on married women, their rights were protected and enforced by means of marriage settlement, and through the intervention of trustees. By these statutes the necessity of a settlement and of a trustee is avoided. The wife is clothed not merely with all the incidents of uncontrolled ownership, but the rights of the husband over her property are

specially limited to such as she may confer, subject to the power of instant revocation when she may see fit to exercise that power. The distinct personality of each in the management of property is recognized, instead of the uncontrolled powers of the husband over the estate of the wife.

By the common law, the wife could not convey to the husband, nor the husband to the wife. To accomplish it (for the thing was done), the devious intervention of trustees was required. Under our statutes, it has been held that a husband might deed directly to his wife. *Johnson* v. *Stillings*, 35 Maine, 427. So the wife may deed directly to the husband. *Allen* v. *Hooper*, 50 Maine, 371. Whether the husband deeded to the wife, or the wife to husband, here was, in each case, a contract between them. In *Randall* v. *Lunt*, 51 Maine, 247, it was held that a husband might convey real estate to his wife in payment of his note given her for money loaned by her to him. So in New Hampshire, it was held that a married woman holding real estate to her sole and separate use, under statutes similar to those of this State, might rent or lease the same to her husband, or any other person, and that she was entitled to the same remedies in respect to such property as if she were unmarried. *Albin* v. *Lord*, 39 N. H. 196. As the wife may release to the husband the control of her property, so she may revoke the right thus conferred. Revoking those rights, it would seem a necessary inference that she might call him in some way to account for what he may have received during his agency. If not so, then he is an agent without responsibility. If the husband without the consent of his wife receives her private property or money, is not his estate liable? If with consent, is it any the less liable?

In *Steadman* v. *Wilbur*, 7 R. I. 481, it was held, when the wife loans money to her husband out of her separate estate, that she has the same right to expect and receive security and repayment, and preference in payment out of his estate, as any other creditor has. It was held in *Logan* v. *Hill*, 19 Iowa, 491, that a promissory note executed by the husband to the wife, for money borrowed of her, was valid and binding, and may be enforced against his representa-

tives after his decease.   In *Huber* v. *Huber*, 10 Ohio, 37, a promissory note, given by the husband to the wife, was held enforcible in equity.   In *Wood* v. *Warden*, 20 Ohio, 518, the same doctrine was again affirmed.  In *Hinney* v. *Phillips*, 50 Penn. 382, it was decided that a married woman might give or loan from her  separate estate to her husband.

A husband may be the trustee of the separate property of the wife.   *Riley* v. *Riley*, 25 Conn. 154.   In *Murray* v. *Glasse*, 21 Eng. L. & Eq. 51, the husband gave his wife a promissory note for moneys received from her separate estate.   " I think, however," observes Wood, V. C., " in the present case I may hold this to be a good declaration of trust by the husband for the benefit of the wife, though in the form of a promissory note."   When there is a trust estate, the husband is responsible to the trustee for funds of the wife's separate estate, appropriated by him to his own use. When the wife is clothed with the full rights of ownership, when she is her own trustee, and the intervention of a trustee has ceased to be necessary, it would be strange if she were not to be protected in the enjoyment of what the law allows her to hold " in her own right," and with which her husband is interdicted from interfering.

The property of the wife is declared hers,—is protected by the law for her sole use.   Whether the husband takes the money of the wife without right, or under an agreement to return it, when the common law fails to give an adequate remedy, equity supplements its deficiencies, and protects the wife in what the statute declares she may hold for her sole use.   The result is that the note of the husband to the wife is not void.   To declare it so, or the loan, of which it is evidence, would be to fail in giving the wife the protection which the statutes were intended to afford.

Our attention has been called to decisions adverse to these results ; but on an examination of the cases relied upon, they will be found to rest on a different state of facts from those here presented for our determination.   In *Turner* v. *Nye*, 7 Allen, 176, the money for which the note was given was the avails of property which the wife held by inheritance from her father, before the existence of the

statutes enlarging the rights of the wife as to any estate coming to her by descent, devise, or gift. "As to this property," observes Dewey, J., "the husband had the common law rights. He thus held the right to receive the annual rents and profits accruing therefrom." In *Phillips* v. *Nye*, 14 Allen, 36, Hoar, J., in delivering the opinion of the court, says, "The agreed facts do not show that the money which the wife received from her relations was her sole and separate property under the statute relating to married women. Whether it would alter the case, if such had been the fact, we need not consider. Nor does it appear that the husband, when his debts were paid with this money at his request, made any agreement to repay it. It was money which he had a right to reduce to possession and to use." In *Patterson* v. *Patterson*, 45 N. H. 164, it did not appear that the wife held the property for which the note was given to her sole and separate use. "Nor do we perceive," observes Bellows, J., "that the case is brought within any of the provisions of our statutes, which give a married woman power to contract as sole. It does not appear that the property for which the original note was given was held by the wife to her sole and separate use, or that the case comes within any of the provisions which authorize her to act as sole. Besides, the property was received by the husband, and the note given in 1844, before the passage of the law of 1846, on which the plaintiff relies." In the case before us, the money was the proceeds of property belonging to the plaintiff at the time of the intermarriage. By the statute, she held it in her own right as her separate estate, and the husband by the marriage acquired no rights therein. The fact that the husband gave his note, negatives the idea that the money loaned was a gift, or that the husband received it as such. Giving the note could not diminish the original liability of the husband for money belonging to his wife's estate, which he had received, and which at the time he promised to return.

The objection to the maintenance of the suit arising from the marital relation, is obviated by the divorce which the plaintiff obtained at her own instance, and through the fault of the defendant.

It is, therefore, a valid note, unpaid, and for which the defendant has received a full and adequate consideration. The defense, so far as it arises from the relation of the parties, is purely technical. It continues only while that relation continues, and it ceases with its termination. In *Albee* v. *Cole,* 39 Verm. 319, the husband had converted to his own use the notes belonging to his wife without her consent. "It is true," observes Peck, J., "that the testator in her life-time could not have maintained at law an action of trover against the defendant. But this was not from any want of right or title to the property, nor because the act of the defendant was not a wrongful and unlawful conversion of her property, nor because she was without remedy to redress the grievance. It was by reason of a personal liability a wife is under, incapacitating her to sue her husband at law. Her remedy would have been ample in a court of equity in her life-time. Her administrator succeeds to all her rights, but we are not prepared to hold that, in enforcing those rights, he is necessarily restricted in his remedy, to the very remedy to which the intestate was limited by reason of the personal liability of coverture, whereby she is legally incapacitated to sue her husband at law. It is true, the administrator represents the intestate, and succeeds to her rights, but he is not under her disability." The court held the action was maintainable. So in *Logan* v. *Hill,* 19 Iowa, 491. But when the disability is at an end, it is immaterial how it came to an end,—whether by the death of the wife, or by her divorce. *Exceptions overruled.*

Kent, Walton, Barrows, Danforth, and Tapley, JJ., concurred.