THOMAS J. GOING v. SARAH A. ORNS.

1. MARRIED WOMEN; *Purchases by a Wife from her Husband.* A wife who purchases personal property from her husband in good faith, and for a good and sufficient consideration, is, in equity, the owner of said property.

2. —— *May maintain Replevin for such property.* If a subsequent creditor of her husband causes an execution to be levied upon said property to satisfy her husband's debt, the wife may maintain an action of replevin against the officer for the recovery of the same.

*Error from Saline District Court.*

REPLEVIN for a horse, brought by *Sarah A. Orns*, as plaintiff, against *Thomas J. Going.* The petition alleged plaintiff's

general ownership and right of possession, and a wrongful taking by defendant. *Going* answered, that he was an officer, and as such had taken the horse by virtue of a writ of execution against the property of one *Henry* A. Orns; that said Henry was the owner of said horse at the time of said seizure, and was indebted upon the judgment on which said writ of execution was issued, etc.; and *Going* claimed the right of possession under said writ. A trial was had before a jury, at the September Term, 1869, and the verdict of the jury and judgment of the court were for the plaintiff, *Sarah A. Orns. Going* excepted, and he brings the case to this court, and asks to have said judgment reversed.

The bill of exceptions shows that the plaintiff, *Sarah A. Orns*, is the wife of said Henry A. Orns; and that at the trial "evidence was given to show that the said plaintiff purchased the horse in controversy from her own husband by a verbal contract of bargain and sale while she the said plaintiff was living with her said husband as his wife, and that said horse, after said assumed sale, remained as before, running at large and depasturing upon the prairie." It also shows that the counsel for the defendant prayed the court "to instruct the jury that the sale aforesaid was invalid, null and void," which instruction the court refused to give. But the court did charge the jury as follows:

"It does not make any difference whether the trade was made with her husband or not. If the sale was *bona fide*, and upon a good and sufficient consideration it was good notwithstanding the parties to the sale were husband and wife."

The defendant excepted to said refusal, and also to the giving of the said instruction. The record brought to this court does not purport to contain all the evidence or instructions given at the trial.

*Canfield & McClure*, for plaintiff in error:

The instruction of the court in this case to the effect that husband and wife can contract with each other is clearly erroneous.

The statutes of Kansas in respect to the rights of the wife as to her separate property are very similar to the recent legislation of a number of other States on the same subject. It has been held that these acts do not confer upon a married woman any new capacity to make contracts, or enlarge any of her rights, which have no relation to her separate estate. *Switzer v. Valentine,* 4 Duer, 96; *Blood v. Humphrey,* 17 Barb. 660; *Sleight v. Read,* 18 Barb., 159; 32 Barb., 250; 33 Barb., 142; 30 Barb., 47; 42 Barb., 374; 25 N. Y., 328; 15 Wis., 365.

The opinion of the court was delivered by

VALENTINE, J.: At common law the husband and wife were one, and all contracts between them were void; and this is the rule that the plaintiff in error wishes to have enforced in this case. Our statues have greatly changed and modified the rules of the common law with respect to the rights of married women. Under our statutes a wife may hold property separate from her husband, and may bargain, sell, convey, contract, sue and be sued, and carry on business in the same manner that a married man may. (Gen. Stat., 562.) These statutes probably do not authorize husbands and wives to buy from, sell to, and trade, traffic, and contract with, each other, to the same extent as though they were each unmarried; but they authorize the wife to buy from, sell to, and trade, traffic, and contract with every other person with reference to her separate property to the same extent that a married man may with his property. We think it will be conceded as a general rule of both law and equity, that a wife may, through the intervention of a trustee or third person, buy from her husband, or sell to him, or contract with him, to the same extent that she may buy from, sell to, or contract with, any other person. For instance, the husband might have sold the horse in controversy to some third person for the benefit of his wife; and if the sale was *bona fide,* both law and equity would uphold the sale. And we further suppose it will be conceded as a general rule of equity, that whenever a contract would be

1. Wife may purchase property from her husband.

valid and binding at law, if made through the intervention of a trustee, or third person, that it will be valid and binding in equity if made directly between the husband and wife. Such at least has been decided by the courts: *Tennison v. Tennison*, 46 Mo., 77; *Livingston v. Livingston*, 2 Johns. Ch., 537; *Putnam v. Bicknell*, 18 Wis., 333; *Baron v. Baron*, 24 Vt., 375; See also *Garlick v. Strong*, 3 Paige Ch., 440; *Wellingsford v. Allen*, 10 Peters, 583; *Pinney v. Fellows*, 15 Vt., 525; *Huler v. Huler*, 10 Ohio, 371; *Wood v. Warden*, 20 id., 518; *Logan v. Hall*, 19 Iowa, 491; *Sexton v. Wheaton*, 8 Wheat., 229; *Wright v. Wright*, 16 Iowa, 496; *Jaynes v. Meth. Epis. Ch.*, 17 Johns., 548; *Cruger v. Douglass*, 4 Edw. Ch., 433; *Cruger v. Cruger*, 5 Barb., 225; *Reser v. Reser*, 9 Ind., 347; 1 Dev. Eq., 187; 3 Desaus. Eq., 158; 4 Desaus. Eq., 560; Wright, Ohio, 406, 604. These authorities are applicable to this case, although some of them have but little application to the point under which we have cited them.

About the only difference between contracts made between husband and wife concerning their separate property, and those made between other persons is, that contracts made between husband and wife in order to be valid and binding must be equitable, while contracts made between other persons may often be valid and binding though not equitable. In any case if contracts tend to defraud creditors they are void. In the present case it seems from the record that the contract was *bona fide*, equitable, and upon a good and sufficient consideration. And there is nothing that tends in the least to show that the contract was made to defraud, or that it did defraud the husband's creditors. This horse may have been sold to the wife long before any credit was given to the husband; and the party giving the credit to the husband may have known at the time that the horse belonged to the wife. There is nothing in the record that tends to show the reverse; and unless it can be seen from what is brought here that the court below committed an error the judgment will not be reversed.

While under the rules of chancery it may be admitted that husbands and wives could always to a certain extent contract

with each other, hold property separate and distinct from each other, and sue and be sued by each other, (Willard's Eq. Jur., 634, et seq., and cases there cited,) yet it may be claimed that whenever a wife sets up an equitable claim to property it can be done only in an action in the nature of a suit in equity. This claim would have great if not controlling force in a State where actions at law and suits in equity are kept separate and distinct; but in a State like this, where all such distinctions, and the forms of all such actions and suits, are abolished, (Gen. Stat., 631, § 10,) such a claim can have but little force. Equity was always the stronger jurisdiction; and whenever a party was the equitable owner of property he could always enforce his equitable title in a suit in equity against the party who held the mere legal title, and he could restrain such party from ever setting up, in a court of law or elsewhere, his merely legal title. Now in this case, whether the right of the wife to said horse was a legal right or an equitable right, we can see no reason why she could not set up her right in an action of replevin. If she was the legal owner of the horse no one would have any doubts of her right to maintain such an action; and if she was the equitable owner, equity being stronger than law, there would seem to be no reason why she could not maintain such an action. In Iowa, where equity and common law jurisdictions are kept separate, still the wife during coverture may maintain an action of replevin against her husband. (*Jones v. Jones*, 19 Iowa, 236.) It has been decided in Maine that " A woman, after a divorce *a vinculo*, may maintain an action against her former husband on a promissory note given by him to her in 1861, *during coverture* for money borrowed of and belonging to her: *Webster v. Webster*, 58 Me., 139. And see authorities there cited, p. 142, *et seq*. The action of replevin in this State is for any owner of personal property, legal or equitable, general or special. During the pendency of the action the defendant has his choice, by giving suitable bond, whether he will retain the property or allow the

2. May maintain replevin.

6—8 KAS.

plaintiff to have it; and at the termination of the action the property is given to the party entitled thereto.

We think from the record in this case that said Sarah A. Orns was the equitable owner of said horse, and that she could maintain an action of replevin for the recovery of the same.

The judgment of the court below is affirmed.

All the Justices concurring.