Lishey *v.* Lishey.

MARY ANN LISHEY *v.* LOUIS C. LISHEY.

1. DIVORCE. *Counsel fees. Malicious suit.* Where, under an order *pendente lite,* a sum is paid as counsel fees, and the suit eventually fails, the wife will not be compelled to refund, even if she have a recovery against her husband for her separate estate, if it appear the suit was brought in good faith and not maliciously.

2. SEPARATE ESTATE. *Husband debtor. Interest.* If the husband, upon mortgage, note or otherwise, receive money, which is the separate estate of the wife, he will not be chargeable with interest, unless the facts and circumstances show that it was the intention he should pay interest; and when the wife brings her bill, interest will commence from the time it is filed and not before.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

JAS. TRIMBLE and BAXTER SMITH for complainant.

E. H. EAST and DEMOSS & MALONE for defendant.

MCFARLAND, J., delivered the opinion of the court.

The first aspect of this cause to be disposed of is the prayer for divorce. This prayer is predicated upon the alleged adultery of the defendant. The allegation, however, is not distinctly and directly made, but it is only "that complainant has been compelled to believe that improper relations existed between the defendant

and a colored woman formerly his slave, named Octavia or "Tobe," and certain facts are stated upon which the suspicion or belief is predicated, which are, however, not of themselves of a criminating character. We will for the argument, however, concede that the charge of adultery is sufficiently made.

The question then is, whether it has been sustained by proof. The parties are advanced in life; they were married in the year 1840. They have lived since about 1847 on a farm owned by the defendant, near Nashville. They are both of good character, and as complainant herself says, they lived together reasonably happy until about the year 1866, when troubles grew up between them, and when she says her suspicions were first aroused as to the relations between the defendant and the woman Tobe, and the complainant finally left the defendant's residence and filed this bill in the year 1873. Tobe had, previous to the filing of the bill, four children, and the bill pretty strongly intimates, if it does not in terms charge, that the defendant is the father of these children.

Upon the question of adultery, the witnesses were examined in open court before the chancellor. The charge is sustained by one witness—a negro woman who had also been a slave belonging to the defendant. The details of the testimony of this witness are not such as to carry conviction—her story is unreasonable upon its face. She is contradicted by another witness and is not sustained by the general facts of the case, and she admits her bad feeling toward the defendant. The chancellor, before whom she was examined, has

discredited her testimony, and we are satisfied to abide by his conclusion in this respect.

The other testimony relied upon to sustain the charge relates mainly to the treatment of Tobe and her children by the defendant. It is shown that the woman was treated with more consideration than the other servants, was better looking and dressed better, and that the defendant bestowed attention upon her children not usually bestowed by white persons upon negro children, and there was a rumor among some persons in the neighborhood that defendant was their father. On the other hand, complainant and defendant had no children of their own, and were both of kindly disposition. The complainant herself was also disposed to pet the children and treat them with unusual kindness. Two of them were in reality nearly white— their mother being a mulatto and they doubtless the children of white men. While there was a rumor among some persons that the defendant was the father of these children, perhaps a better defined rumor attributes the children to other white men; while the two younger children, being darker than their mother, were generally believed to be the children of negroes.

Without discussing the testimony at length, we agree with the chancellor that the charge is not sustained. Tobe was a house servant and lived in the house with complainant and defendant. Her oldest child was born as far back as about 1857, and the others at intervals of three or four years following. It is by no means probable that this adulterous relation should have existed for all this period between Tobe and the defend-

ant, and the complainant, herself living under the same roof with them, should not have discovered more convincing proof. The divorce was properly refused.

The bill, however, presents another and different case. After the marriage of these parties, by decree of the chancery court at Nashville, the complainant recovered about $900 from her father, John T. Smith, which by the decree was settled upon her to her sole and separate use, and the money paid into court, and in the first instance ordered to be loaned at interest. Subsequently it was ordered by the court that the master pay said money to the defendant, Louis C. Lishey, upon his satisfying the master that he had a good title to the tract of land on which he resided, and on his executing to the master a deed or instrument of proper kind, charging said real estate with said sum of money to the sole and separate use of his wife. Subsequently, to-wit, on the 22d of November, 1848, the master reported that defendant had satisfied him as to the title, had executed a deed as security for the money, and that he had paid the money over to him, amounting to $914, and the defendant in his answer admitting that he received the money and executed the mortgage, but insists that he was not to pay interest.

The defendant in his answer also admits that about the year 1848 or 1850, he sold a slave, the separate property of his wife, for which he received $500, and this sum, with the $900, he has used for the general support of the family, but has not repaid either principal or interest.

No very serious resistance has been made to the complainant's right to recover these two sums of money, to-wit, $900 and $500, but the question is as to her right to recover interest. The chancellor allowed interest only from the filing of the bill, and the complainant has appealed, and this presents the real question in the cause.

In equity, the husband may become the debtor of the wife with respect to her separate estate, and her right to payment will be as favorably regarded as the right of any other creditor: 2 Bishop on Married Women, sec. 360; *Wilkerson* v. *Wilkerson*, 1 Head, 305; Story Eq. Jur., sec. 1373.

It would seem to follow, that if the relation of debtor and creditor exist between them, the contract of borrowing would carry with it its usual incident, and that the wife's right to interest would be as fully secured as her right to the debt. The interest being, as between other parties, an incident to or part of the debt itself, and beyond doubt if the interest be contracted for, or the contract be of a character to draw interest, or the circumstances show that it was intended, or equitable that it should be paid, then it may be exacted and collected by the wife to the same extent that the principal is collectible. On the other hand, if the income of the wife's separate estate be allowed, without objection, to go into the hands of the husband and is used for their joint benefit, the husband cannot afterwards be compelled to account for it. If the husband and wife have lived together and have been in the habit of jointly receiving and using the

income of her separate estate, it will be presumed to
have been done by her consent. She has a right to
demand and enforce its payment to her, but this right
may be waived, and whether it has or not will de-
pend largely upon the relations between the parties.
So Mr. Bishop says that interest will in such cases
follow under proper circumstances, consideration of the
relationship entering more or less into the question:
See sec. 360. Or, as it is elsewhere expressed: "If
the wife permit the husband to use her separate estate,
he will not be liable for interest unless there is an
agreement to that effect, express or implied, from the
mode of dealing:" Tiffany and Ballant on Trust, cited
by Judge Dillon in *Logan* v. *Hall,* 19 Iowa, 500.
From the same opinion the following extract, cited
from *Roach* v. *Bennett,* 24 Mass. (2 Curt.), is in point:
"Whenever the wife has a separate estate (including
money), which she permits her husband to use, and
there be no stipulation that interest shall be paid by
him for the use of it, the law will presume, in the
absence of any circumstances showing a contrary in-
tention or understanding, that the husband should not
account for or pay interest on the funds; but if, from
the mode of dealing, there be any circumstances from
which it may reasonably be inferred that the intention
of the parties was to charge interest, then the husband
is rightfully and properly chargeable therewith," as
where he borrowed the wife's moneys and lent them to
a mercantile firm of which he was a member.

The case of *Logan* v. *Hall,* from which the above
extracts are taken, was where the wife had loaned to

the husband money, which, under the laws of Iowa, was her separate property, not with the intention of giving it to him, but with the expectation and promise that it should be repaid, and for which he subsequently gave his notes, due one day after date. Several years elapsed after the advance of the money and after the date of the notes, when the husband died. It was held, that although her right to the principal was clear, yet that interest should not be recovered. This upon the ground that there was no express promise to pay interest and none to be implied from the mode of dealing. It did not appear that the husband had made any profit out of the money borrowed, it being more probable that it was invested in the homestead upon which they . lived, or was used for family expenses. Judge Dillon says: "Courts of equity in such cases infer the waiver of payment by the wife or her acquiescence in the non-payment; for these courts, as the above authorities show, apply in this respect different rules and indulge different presumptions in cases where the transaction is between husband and wife, than where it is between strangers": See 19 Iowa, 501. A leading case upon the subject is *Powell* v. *Hankey,* 2 P. W., 82, cited by Judge Cooper in his opinion in this case, 2 Tenn. Ch., 5, for which also see other authorities.

While, as we have said, the wife has the right to demand the payment of the money and the interest and dispose of the same as she chooses, leaving the support of herself and family to be borne by the husband, yet when the husband has been permitted to

retain the money without interest for a series of years, and has expended the same for the support of the family, including the wife, the court will presume, in the absence of countervailing circumstances, that she has consented that the interest might be so applied. Such consent upon the part of the wife would, under ordinary circumstances, be reasonable and proper, and if she intends to demand the interest, it would be fair that the husband should be so informed. We have seen in the present case there was no express contract to pay interest. It does not appear even that a note was given for the $900, nor was it designated in terms as a loan; the decree was simply that the money be paid over to the husband upon his showing that he had a perfect title to certain land upon which he gave a mortgage, and it was so paid and the mortgage given, and no demand for interest made for nearly twenty years. Precisely how the money was used by the husband is not definitely shown; whether in the purchase of the lands, as charged in the bill, or in the support of the family, as stated in the answer. In either event, it does not appear that any special profit was made out of the same.

The complainant had other separate property of her own, but it does not appear that she contributed out of it to the support of the family. The defendant supported the family—the complainant, however, contributing her personal attention to the household duties.

We hold that the decree disallowing interest previous to the filing of the bill is correct. We do not see that any different principle applies to the $500.

Possibly there may be additional reason for disallowing interest on this item, for in addition to the presumed consent, the fact that the husband was receiving the hires of the slave sold, would seem to favor his use of the money received.

A question is made by the defendant's counsel. The chancellor made an order *pendente lite,* allowing the complainant a certain sum as alimony and also for her counsel fee, in all amounting to $500—following the case of *Thompson* v. *Thompson,* 3 Head, authorizing such allowance in a divorce suit by or against a wife, where she has not sufficient separate means of her own. Said sum was paid, and it is argued that complainant should now be required to refund it out of her recovery in the case, or in other words, that it be credited on the amount, upon two grounds:

1st. That it appears from proof taken upon reference made in this court upon an application by complainant for an additional allowance, that in reality she was possessed of sufficient separate estate of her own to support herself and pay the expense of the litigation. But it is obvious that this proof cannot be looked to. The correctness of the chancellor's decree must be determined upon the record as it was before him.

2d. Upon the ground that as complainant failed to sustain her case for divorce, the allowance was improperly made; and although in general such sums cannot be recovered back, yet as the court in this case has the fund due complainant under its control, it can do justice by deducting it from her recovery.

We are not prepared to say that this might not be done, if we were satisfied that complainant's suit for divorce was not prosecuted in good faith but in malice. But while, in our opinion, she has failed to make out the case, we cannot say that she did not prosecute it in good faith and under an honest belief that the charge made by her was true.

The decree will, therefore, be in all respects affirmed, the costs of this court to be paid out of complainant's recovery.